RENDELL OWENS AND VIOLA OWENS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1732-67.    Filed July 8, 1968.

Rendell Owens, pro se.
*Roy S. Fischbeck*, for the respondent.

IRWIN, *Judge:* The Commissioner determined deficiencies in petitioners' income tax of $450.69 for 1964 and $426.18 for 1965. The question presented is whether petitioners are entitled to deduct amounts spent for meals and lodging in Des Moines, Iowa, and for automobile travel between Des Moines and Oskaloosa, Iowa, as away from home traveling expenses under section 162(a)(2).[1]

### FINDINGS OF FACT

Petitioners are husband and wife and legal residents of Oskaloosa, Iowa. The expenses in question were incurred by the husband (herein-

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

after either petitioner or Owens). The joint income tax returns for 1964 and 1965 were timely filed with the district director of internal revenue in Des Moines.

Petitioners have owned and maintained a residence together in Oskaloosa since 1941. Oskaloosa is located about 60 miles southeast of Des Moines. Owens was last employed in Oskaloosa about 1954. In 1959 he left the Iowa tax department to commence employment with the Iowa State Highway Commission (hereinafter the commission), where he was still employed at the trial of this case in March 1968.

The commission's headquarters were located at Ames, Iowa. The commission divided the State into six districts, each district having four to six permanent construction offices or residencies. Upon beginning this employment Owens was told that he could be transferred at any time to any place in Iowa depending upon the needs of the commission, and the commission reserved the right to require such a transfer as a condition of continued employment.

In 1959 or 1960 the Des Moines construction office commenced work on the Des Moines Freeway Construction Project (hereinafter the freeway project). The freeway project was part of the interstate highway system comprising the urban link through the Des Moines metropolitan area. Completion of the freeway project originally was scheduled for 1972, but the date was later revised to 1968 or 1969.

Petitioner joined the Des Moines office in April 1960, following an assignment in Creston, Iowa. His transfer to Des Moines was considered permanent by his immediate supervisor. Originally he was given various inspection assignments in and around Des Moines and in Lacona and Grinnell. In 1962 or 1963 he was assigned to the freeway project in Des Moines, and performed various inspection tasks in and around that duty post. In 1965 or 1966 the duty post was moved about 2 miles north of the Des Moines city limits to Marquisville which also was in the Des Moines construction residency.

Sometime before 1964 Owens became aware that the particular inspection tasks which he performed on the freeway project would continue at least into 1966 and probably several years thereafter. Owens' immediate supervisor expected him to continue this assignment until completion.

Sometime after petitioner joined the Des Moines office, subsequently hired employees began the practice of signing statements to the effect that their assignments were temporary and that they were subject to transfer. Petitioner had not been asked to sign such a statement, nor had he done so.

Though not required to reside near his post of duty, petitioner, since 1963, rented a room in Des Moines at three successive times during his

assignment there. He kept each room for about 1 to 1½ years. On weekends he traveled by automobile to Oskaloosa in order to be with his family.

During 1964 and 1965 petitioner's employer furnished his transportation necessary for the performance of his duties on the freeway project. Also his employer provided a per diem allowance to cover petitioner's noontime meal.

Normally when the commissioner transfers an employee from one office to another permanent office it reimburses him for meals and lodging expenses incurred during the first 45 days of the new assignment. It is contemplated that this period gives the employee a chance to relocate his family if he so desires.

On his 1964 return petitioner claimed employee business expenses of $1,765 for meals and lodging in Des Moines plus $1,301.46 for automobile expenses representing weekend travel between Des Moines and Oskaloosa. The total sum, $3,066.46, was reduced by $564, representing his employer's payments for certain of these expenses,[2] and he deducted the remainder of $2,502.46 from gross income. He observed the same pattern on his 1965 return as follows:

| | |
|---|---:|
| Meals and lodging | $1,887.50 |
| Automobile expenses | 1,372.80 |
| | 3,260.30 |
| Less: Employer's payments [3] | 582.88 |
| Amount deducted from gross income | 2,677.42 |

The Commissioner disallowed the amounts claimed as deductions for meals, lodging and automobile expenses for both years, and recomputed petitioner's itemized medical expense deductions to reflect the disallowances. There were no other upward adjustments to petitioner's income.

### ULTIMATE FINDINGS OF FACT

Des Moines and Marquisville were petitioner's successive principal places of employment during 1964 and 1965. His assignment during this time was for an indefinite period, and it was not temporary.

### OPINION

Petitioner's case rests on whether he incurred "traveling expenses * * * while away from home in the pursuit of a trade or business"

---

[2] The record does not permit a finding regarding whether these employer's payments represent reimbursement for noon meals and on-the-job travel or reimbursement for other traveling expenses.

[3] See fn. 2, *supra*.

580

within section 162(a)(2) as amended.[4] Petitioner makes several contentions in his efforts to bring his expenditures within this statutory language.

First, petitioner contends that his posts of duty in Des Moines and Marquisville were away from his residence in Oskaloosa and away from the commission's headquarters in Ames, and, therefore, he reasons that Des Moines was away from both his personal home and his business home.

The problem of defining what section 162(a)(2) means by the word "home" has given rise to considerable litigation and difference of judicial opinion. See 4A Mertens, Law of Federal Income Taxation, sec. 25.93 (1966). This Court has consistently taken the position that "home" refers to the taxpayer's "principal place of business, employment or post or station at which he is employed." *Floyd Garlock*, 34 T.C. 611, 614 (1960); *Ronald D. Kroll*, 49 T.C. 557 (1968). Thus we have focused on the place where the work actually has been performed [5] rather than upon the location of the taxpayer's personal residence.

After avoiding any definition for many years,[6] the Supreme Court approached the problem in the context of deciding whether a member of the Armed Forces assigned to an overseas permanent duty station was away from home. *Commissioner* v. *Stidger*, 386 U.S. 287 (1967). The taxpayer's family was not permitted to accompany him to his assigned post. Instead, his family remained in their personal residence in California. The Supreme Court held that "the military taxpayer is not 'away from home' when he is at his permanent duty station whether or not it is feasible or even permissible for his family to reside with him there." *Id.* at 296. The Supreme Court confined its decision to the military taxpayer, but in so doing it approved this Court's concept of his tax home as being his principal place of employment.

We have found as an ultimate fact that petitioner's principal places of employment during 1964 and 1965 were Des Moines and Marquis-

<hr>

[4] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \* \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; \* \* \*.

[5] The typical exception arises when the taxpayer temporarily performs his duties away from his principal place of employment. See *Peurifoy* v. *Commissioner*, 358 U.S. 59, 60 (1958). We shall discuss this exception *infra*.

[6] *Peurifoy* v. *Commissioner, supra* fn. 5; *Commissioner* v. *Flowers*, 326 U.S. 465 (1946); 4A Mertens, Law of Federal Income Taxation, sec. 25.93 (1966).

ville. He performed all of his duties in and around those cities. At successive times they were his posts of duty. The evidence reveals no other place of business or employment during the relevant years. While the commission's headquarters were in Ames, there is no indication that Owens even went to Ames during 1964 and 1965 and certainly none that he performed services there. At most, the evidence permits the inference that Owens could have expected to receive some basic orders from commission headquarters; but such circumstance does not differentiate him from anyone who is employed by any Federal or State governmental agency, or, for that matter, a large corporation with a central employment office.

Two of the many cases in this area amply illustrate the weakness of petitioner's position. In *Beatrice H. Albert*, 13 T.C. 129 (1949), the petitioner lived 47 miles from her principal and only place of employment in Massachusetts. Because of impossible travel conditions between her residence and her job and because she was subject to transfer on short notice, she took a room near her job during 21 weeks when daylight hours were relatively few and the weather was relatively adverse. In denying her a deduction for the 21 weeks of living and weekend traveling expenses we felt that her choice was for personal rather than for business reasons. Clearly the circumstances in *Beatrice H. Albert* are stronger for the taxpayer than in the case at hand. There is no evidence here that Owens could not perform his job unless he lived in Des Moines. All we know is that Oskaloosa is about 60 miles from Des Moines and a couple of miles farther from Marquisville. The choice made by Owens was every bit as personal as that made by Beatrice Albert, and section 262 prohibits any deduction for personal or living expenses.

*James R. Whitaker*, 24 T.C. 750 (1955), involved a civilian engineer employed by a joint venturer under a contract with the Department of the Army for construction near Thule, Greenland. Whitaker's residence was in Iowa where his family remained during his several stays in Greenland. During his three visits to the United States Whitaker stopped at his employer's main office in New York and at its recruiting office in Minnesota. He twice visited his family in Iowa also. Whitaker argued that his principal place of business was in New York and that his home was in Iowa, but we held that he was employed in Thule. Again, Owens' circumstances are not as strong as Whitaker's because of the latter's trips to his headquarters.

Petitioner also contends that there is no difference between a temporary and an indefinite assignment, but that in any event his assignment was temporary because he was subject to transfer at any time. The problem of impermanence arising from jobs which necessarily contemplate relatively frequent changes of location is not new.

We have engrafted an exception upon our interpretation of the "away from home" requirement which permits the claimed deduction when the petitioner's impermanent employment is temporary rather than for an indefinite period. *Peurifoy* v. *Commissioner*, 358 U.S. 59, 60 (1958), and cases cited therein; and see *Ronald D. Kroll*, *supra* at 562, which sets forth the guiding principles as follows:

> But if a taxpayer has a principal place of employment in one location and accepts temporary work at another location, his presence at the second location is regarded as "away from home." * * * However, if the taxpayer, having a principal place of employment in one location, accepts work at another location which is not temporary but is of indefinite or indeterminate period, his presence at the second location is not regarded as "away from home." * * * Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home. * * *.

Application of these principles to petitioner's circumstances requires us to hold that petitioner was employed for an indefinite or indeterminant period in Des Moines and Marquisville. He performed various duties out of the Des Moines construction office before being placed on the freeway project in 1962 or 1963. Prior to 1964 he realized that the duties he was performing would probably require several years for completion. Other than having been told routinely that he could be transferred at any time, he had no reason to believe that he would be transferred insofar as we can ascertain from the evidence presented. If anything, he had reason to believe that the needs of the freeway project would require his services until his particular inspection tasks were completed.

Owens' circumstances regarding his indefinite status were not materially different from those set forth in *Floyd Garlock*, *supra*. Garlock was also a construction worker who traveled from his New York residence to various construction sites within a 15-mile (30-mile on two occasions) radius of Passaic, N.J., where his employer was based. Because he was not a member of the union local having jurisdiction in that area, he was required to obtain a union work permit on a weekly basis. Preference was given to members of the resident union local. We held that Garlock's employment, which may have been temporary originally, had become indefinite before the particular years in issue. Since Owens has failed to show that his working conditions and his employer's needs realistically made his job temporary, it is hard to see why he should be treated more favorably than Garlock whose situation gave rise to too great a degree of permanence for us to find "temporary" employment. See also *Beatrice H. Albert*, *supra*, where

we said that petitioner's impermanent employment was indefinite in duration.

Petitioner seriously contends that the Commissioner should not be permitted to assess deficiencies for 1964 and 1965 because he allowed similar expenses for 1963 and because he allowed claimed overpayments of withheld tax for 1964 and 1965. The year 1963 is not before this Court, and our decision and reasoning above are limited to 1964 and 1965 as the years in issue.

The overpayments claimed on the returns for 1964 and 1965, and tentatively allowed, were based largely upon the traveling expenses which we are here deciding are not properly deductible. In *Henry C. Warren*, 13 T.C. 205, 209 (1949), where we also upheld the Commissioner's disallowance of traveling expenses, we cited *Clark v. Commissioner*, 158 F. 2d 851 (C.A. 6, 1946), affirming a Memorandum Opinion of this Court, for the now well-established rule that:

Refunds of alleged excess withheld from wages under [a] "pay-as-you-go" income tax plan are a matter of grace to [the] taxpayer made in consequence of [an] amount due as shown on [his] return, are subject to final audit and adjustment, and hence are not final determinations so as to preclude subsequent disallowance of deductions.

Petitioner's contention based on prior overpayments for 1964 and 1965, therefore, lacks merit. See also *Mary R. Milleg*, 19 T.C. 395 (1952); *Carl H. Thorsell*, 13 T.C. 909 (1949); *Burnet v. Porter*, 283 U.S. 230 (1931).

*Decision will be entered for the respondent.*

