Richard H. and Lovella H. Sand v. Commissioner.
Sand v. Commissioner
Docket No. 132-69 SC.
United States Tax Court
T.C. Memo 1969-155; 1969 Tax Ct. Memo LEXIS 142; 28 T.C.M. (CCH) 774; T.C.M. (RIA) 69155; July 22, 1969. Filed Roy E. Crawford, for the petitioners. Nancy L. Simpson and Joel A. Sharon, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $879.98 in petitioners' Federal income tax for the year 1967. The only issue remaining for decision is whether certain traveling expenses were incurred by petitioner Richard H. Sand "while away from home" within the meaning of section 162(a)(2) [1] so as to entitle him to a deduction. By oral stipulation at trial, petitioners and respondent agreed that, if a deduction is allowable for such expenses, the amount to be deducted is $3,809.47 instead of $4,409.47 claimed on petitioners' *143 income tax return. Findings of Fact Some facts were orally stipulated and are found accordingly. Richard H. Sand and Lovella H. Sand are husband and wife who were legal residents of Yorkville, California, at the time they filed their petition herein. They filed their joint Federal income tax return for the taxable year 1967 with the district director 775 of internal revenue at San Francisco, California. For many years petitioners have lived in the small ranch community of Yorkville, California. About 1965, jobs in the Yorkville area became scarce because of cutbacks in the availability of timber for cutting, so Richard (herein called petitioner) began searching for a more secure means of earning a living. On June 21, 1965, he obtained a temporary 6-month appointment for work as a maintenance man for the California Department of Highways at Hopland, California. Then on December 2, 1965, petitioner obtained a second 6-month appointment at Manchester, California. At the end of this second period, he was discharged pursuant to the terms of his employment. He was then employed *144 for several months at a lumber mill near Philo, California, which is about 17 miles from Yorkville. Petitioner continued his search for more permanent employment. Hiring authority with the California Highway Department was vested in district superintendents, so petitioner contacted several district superintendents in the general area of northwestern California seeking an appointment. Once hired by the State, he then understood that he could transfer within a short period of time to an area within commuting distance from his home in Yorkville. In October 1966, petitioner accepted an opening which became available in Orleans, California. Orleans is approximately 280 miles from Yorkville, and is in a remote area referred to as an undesirable place to live "unless [one likes] hunting and fishing and living out in the brush." At the time petitioner was hired by Harry Williams, the district superintendent, it was understood that petitioner would stay at Orleans for a period of 6 months, after which he would be transferred to another location nearer his home when an opening became available. His ultimate goal was to be located in the yard in Booneville, only 10 miles from his home *145 town of Yorkville. Although the superintendent would have preferred that petitioner stay a year, the superintendent agreed that petitioner could transfer when an opening became available. The appointment in October 1966 as a highway maintenance man was a "regular permanent" civil service appointment with the State Highway Department. Soon after petitioner went to work at Orleans on October 20, 1966, the Governor of California announced a freeze on hiring of State personnel. The freeze had the effect of inhibiting the opportunity for petitioner to transfer because ordinarily it was necessary to have a replacement prior to a transfer and it was unlikely that anyone would desire a transfer to Orleans. Petitioner had not anticipated the freeze. Petitioner continued to seek a transfer to a point closer to his home in Yorkville, and called upon three or four superintendents when he heard of openings. If it had not been for the freeze, he could have transferred 3 months after going to Orleans. While stationed in Orleans, petitioner traveled 7 hours each way to return to his home in Yorkville every other weekend. He never considered moving his family to Orleans because of the remoteness *146 of that area. He lived in a trailer in Orleans during the week. Petitioner was subject to transfer at his own request or at the needs of the State. Petitioner's superintendent at Orleans asked him, apparently sometime in 1967, if he would be willing to transfer to Willow Creek, the main yard in that district, as a "floating" maintenance man. Willow Creek was 30 miles closer to Yorkville than Orleans. Petitioner was agreeable to the change in assignment, but the transfer was not made. On or about December 15, 1967, petitioner was transferred at his request to Fort Bragg, California, which is approximately 59 miles from Yorkville. Petitioners have lived in Yorkville 14 years, and have owned a home there for 12 years. Petitioners' house is next door to Mrs. Sand's parents. Mrs. Sand has lived in Yorkville for the last 23 years, and petitioner lived in an adjoining town 12 miles away for 10 years prior to their marriage. Petitioners were married in Booneville, a nearby town that is the main town of the four small towns in the valley (Navarro, Philo, Booneville, and Yorkville). Petitioners' income tax return shows that they contributed to the Methodist Church in Booneville in 1967. *147 Petitioners have two children, ages 11 and 12, who attend the same school in Yorkville. Petitioner's automobile was registered in Yorkville, and he is registered to vote there. Mrs. Sand has been employed by the Philo Lumber Company in nearby Philo since 1965. In order for petitioner to obtain a job as a highway maintenance man it was 776 necessary for him to accept an employment assignment in the remote area of Orleans for a temporary period of time until he could be transferred to a location near his home in Yorkville. Petitioner incurred traveling expenses (including amounts expended for meals and lodging) of $3,809.47 in 1967 while away from Yorkville in pursuit of his trade as a highway maintenance man. Ultimate Findings 1. Petitioner's employment assignment in Orleans was temporary. 2. Petitioner's "home" during the year 1967 was Yorkville, California. Opinion Section 162(a)(2) allows the deduction as an "ordinary and necessary" expense of "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." The narrow factual question presented in this case is whether petitioner's expenditures *148 outside of Yorkville were made "while away from home." This depends to a great extent upon whether petitioner's employment assignment in Orleans for most of the year 1967 was "temporary" or "indefinite." Peurifoy v. Commissioner, 358 U.S. 59 (1958). This we must determine from all the facts and circumstances involved. Petitioner claims that Yorkville was his "home." Respondent argues that Orleans was petitioner's "home" for tax purposes. We agree with petitioner. The phrase "away from home" is not selfdefining. See United States v. Correll, 389 U.S. 299, 304 (1967). The decided cases present varied, and often difficult, questions of fact and we find it unnecessary to review them in detail. We recognize that it is not always easy to draw the line between what is "temporary" and "indefinite." But, exercising our best judgment on this record, we believe the petitioner's employment assignment at Orleans during most of 1967 was temporary. These particular facts, as we view them, bring this case within the ambit of Harry F. Schurer, 3 T.C. 544 (1944); Coburn v. Commissioner, 138 F. 2d 763 (C.A. 2, 1943); and Burns v. Gray, 287 F. 2d 698 *149 (C.A. 6, 1961).[2] Compare Ronald D. Kroll, 49 T.C. 557 (1968), Beatrice H. Albert, 13 T.C. 129 (1949), and Rendell Owens, 50 T.C. 577 (1968), which we regard as distinguishable on their facts. There is present here a coalescence of factors that fortify our conclusion: 1. At all times petitioner considered his assignment to be temporary. He understood that he had to take a temporary assignment to a remote area like Orleans in order to obtain a permanent job with the California Highway Department and that he would be transferred to a place closer to his home in Yorkville within a relatively short period of time. Cf. Harvey v. Commissioner, 283 F. 2d 491, 495 (C.A. 9, 1960), where the Court of Appeals said that the proper test to determine whether petitioner acquired a new tax home is whether - there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes a "long period of time" varies *150 with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. It is clear that petitioner reasonably expected to be at Orleans for less than a "long period of time" and could not reasonably be expected under such circumstances to move his family from Yorkville to Orleans. Throughout his stay at Orleans petitioner persisted in his efforts to obtain a transfer to a location near Yorkville. He frequently talked with the district superintendents, and finally secured the transfer to Fort Bragg in December 1967. In the interim, he was willing temporarily to incur the additional and duplicitous expense and inconvenience of living away from his "home" in Yorkville. See James v. United States, 176 F. Supp. 270, affirmed 308 F. 2d 204 (C.A. 9, 1962). 2. All the surrounding facts are consistent with petitioner's intent that Yorkville remain his "home." He was forced to seek work elsewhere due to a shortage of jobs in the Yorkville area. Petitioner had strong family ties to Yorkville. Both he and his wife went to *151 school in the area and have 777 lived there for all their adult lives. They have lived in their own home for 12 years, which is located next door to Mrs. Sand's parents. Their automobile is registered there. They vote there. Their children go to school there. Mrs. Sand works in nearby Philo. Accordingly, we hold that petitioner's employment assignment at Orleans was temporary, and that his "home" for tax purposes in 1967 was Yorkville. The expenditures incurred were unavoidable; they were reasonable; and, in our view, they were ordinary and necessary expenses while away from his "home" in pursuit of his trade. To reflect the agreement of the parties as to the correct amount of such expenses and to provide for the proper medical deduction, Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. Also see Michael Kuris, T.C. Memo. 1956-163; Howard Greenway, T.C. Memo. 1964-13; and Rev. Rul. 60-189, 1960-1 C.B. 60↩, 63.