Wayne A. Fowler and Lougena D. Fowler v. Commissioner.
Fowler v. Commissioner
Docket No. 3772-69 SC
United States Tax Court
T.C. Memo 1970-173; 1970 Tax Ct. Memo LEXIS 191; 29 T.C.M. (CCH) 762; T.C.M. (RIA) 70173; June 23, 1970, Filed *191 Petitioner, a construction worker, maintained a residence for his family approximately 150 miles from his principal place of employment at the John Day Dam construction site. Petitioner lived near the construction site during the week and visited his family on the weekend. Held, the meals, lodging, and transportation expenses incurredby petitioner in the vicinity of the construction site during 1966 were not deductible"away from home" travel expenses within the meaning of sec. 162(a)(2), I.R.C. 1954, but instead were nondeductible personal expenditures under sec. 262 I.R.C. 1954. Robert J. Groce, Yeon Bldg., Portland, Ore., for the petitioners. Joseph M. Wetzel, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined a deficiency in petitioners' Federal income tax for the calendar year 1966 in the amount of $773.52. The sole issue presented for our decision is whether certain expenses incurred by the husband-petitioner herein were incurred while "away from home" within the meaning of section 162 (a)(2) of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated, and the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. A summary of the pertinent facts is set forth below. At the time of filing their petition herein, Wayne A. Fowler (hereinafter referred to as petitioner) and Lougena D. Fowler, husband and wife, had their legal residence in Lyons, Oregon. They filed their joint Federal *193 income tax return for the taxable year 1966 with the district director of internal revenue at Portland, Oregon. During the taxable year involved herein, and for several years prior thereto, petitioner was a member of the Hoisting & Portable Engineers Union, Local No. 701, Portland, Oregon. Generally, petitioner located employment as a concrete dispatcher at various construction sites through referrals by this union. Since 1948, petitioner has had a change either in his construction site or his employer on approximately 35 separate occasions. 763 From mid-1963 to June of 1964, petitioner was employed by General Construction Company (hereinafter referred to as General Construction) on the construction of the John Day Dam at Rufus, Oregon. The city of Rufus, Oregon, during the relevant time, had a population of approximately 625. While so employed, petitioner and his family of seven lived in a rented house 15 miles from Wasco, Oregon. Wasco is approximately 10 miles from the dam site, and during the relevant time had a population of approximately 390. In May of 1964 petitioner's landlord informed him that he soon needed possession of the house in which petitioner and his family *194 then lived. Petitioner was unable to find another house for rent or sale in either Wasco or Rufus suitable for housing his seven-member family. At the end of the school term in June of 1964, petitioner purchased from his mother-in-law a house located in Lyons, Oregon, and moved his family's residence there. The city of Lyons is approximately 150 miles from Rufus and, during the relevant time, had a population of approximately 600. In June of 1964, approximately three weeks after petitioner's family moved to Lyons, the work of General Construction, a subcontractor for the John Day Dam, came to an end, and the particular job that petitioner had had with General Construction at the dam site came to an end at the same time. Petitioner then joined his family in Lyons with the hope of obtaining employment at the Green Peter Dam construction site, approximately 50 miles from Lyons. Petitioner would have been willing to spend two hours (one hour each way) commuting between Lyons and the Green Peter Dam in order to live with his family. Six weeks after leaving General Construction's employ, petitioner was contacted by his union and petitioner again accepted employment at the John Day Dam. *195 At first petitioner expected this employment to continue for a reasonably long period of time but was less certain after an argument with his superintendent in September 1964. From some time shortly after July of 1964 until January 9, 1970, petitioner was continuously (except for a brief strike during the fall of 1964) employed as a cement truck dispatcher at the John Day Dam construction site. For two to three years, including the taxable year involved herein, petitioner lived in a motel in Rufus which was located approximately two miles from his job. In the latter part of 1967 petitioner moved to The Dalles, Oregon, and lived with some people there. Petitioner worked approximately 65 to 70 hours per week during 1966. He worked the graveyard shift, commencing work at 12:30 a.m. and seldom getting off work before 1:00 or 2:00 p.m. the next day. On the weekends petitioner visited his family in Lyons. The city of The Dalles, Oregon, with a population during the time material hereto of approximately 11,700, is located approximately 30 miles downstream from the dam site at Rufus. During 1966, the road between The Dalles and the John Day Dam construction site was under construction *196 for enlargement from a two-lane road to a four-lane highway. Normally it would take approximately an hour to drive between The Dalles and the John Day Dam construction site, but at times during 1966 the construction would cause delays of up to 2 hours or more. In his joint Federal income tax return for the taxable year 1966, petitioner claimed an "away from home" deduction of $3,486 for the meals, lodging, and travel expenses he incurred while living near the John Day Dam construction site. In his notice of deficiency dated April 24, 1969, respondent disallowed such deduction on the ground that petitioner failed to establish that the claimed expenses were incurred while petitioner was away from home in the pursuit of a trade or business. Opinion Section 162(a)(2) allows an ordinary and necessary business expense deduction for "traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *." [2] This provision is designed "to 764 mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain *197 two places of abode and thereby incur additional and duplicate living expenses." Ronald D. Kroll, 49 T.C. 557, 562 (1968). See also Carmen Chimento, 52 T.C. 1067, 1072 (1969), and the cases cited there. By maintaining a residence for his family in Lyons, Oregon, approximately 150 miles from his place of employment and living quarters at the John Day Dam construction site, petitioner undeniably incurred duplicitous living expenses. However, respondent argues that the meals, lodging, and transportation expenses incurred by petitioner in the vicinity of the construction site were not incurred "away from home" within the meaning of section 162(a)(2) and, consequently, are nondeductible personal expenditures under section 262. We agree. *198 This Court has held on numerous occasions that the term "home" as it is used in section 162(a)(2) refers to the vicinity of the taxpayer's principal place of employment rather than the location of his personal residence, if such residence is located in a different place from his principal place of employment. See, e.g., Emil J. Michaels, 53 T.C. 269, 273 (1969); Rendell Owens, 50 T.C. 577, 580 (1968). The record herein clearly shows that petitioner's principal place of employment before, during, and after the taxable year involved herein (1966) was the John Day Dam construction site at Rufus, Oregon. From mid-1963 to June of 1964 petitioner was employed by General Construction at the John Day Dam construction site. In June of 1964 petitioner moved his family from a rented house located within 25 miles of the John Day Dam construction site to a house in Lyons, Oregon, which is approximately 150 miles from such construction site. Later in the same month, when petitioner's job with General Construction terminated, he himself moved to Lyons to seek employment at the Green Peter Dam, approximately 50 miles from Lyons. Six weeks after leaving General Construction's *199 employ, petitioner was contacted by his union and again accepted employment at the John Day Dam. From some time after July of 1964 until January 9, 1970, petitioner was employed as a cement truck dispatcher at the John Day Dam construction site. Thus, from mid-1963 unil January 9, 1970, a period of approximately 6 i/2 years, petitioner's sole (and therefore his principal) place of employment was the John Day Dam construction area. It is well established that living expenses incurred at the taxpayer's principal place of employment are nondeductible personal expenses under section 262. Floyd Garlock, 34 T.C. 611, 614 (1960). Petitioner advances the position that his employment at the John Day Dam during 1966 was "temporary" rather than "indefinite." In so arguing, petitioner is attempting to bring the instant factual pattern within the scope of an exception that has been engrafted upon the general rule that a taxpayer's "tax home" is his place of employment. This exception was articulated in our opinion in the case of Ronald D. Kroll, supra, at page 562, as follows: But if a taxpayer has a principal place of employment in one location and accepts temporary *200 work at another location, his presence at the second location is regarded as "away from home." E. G. Leach, 12 T.C. 20 (1949); Harry F. Schurer, 3 T.C. 544 (1944). * * * The instant case simply does not fit within the mold of the foregoing exception. As we have pointed out, petitioner herein remained in the same principal place of employment for a period of 6 i/2 years, encompassing the taxable year at issue. A fortiori petitioner never left his principal place of employment to accept temporary "away from home" employment at a new location. Even if by some stretch of the imagination it could be said that petitioner's employment at the John Day Dam shortly after July of 1964 constituted acceptance of temporary work at a new location, surely such employment had become "substantial, indefinite, or indeterminate in duration" by the beginning of the taxable year at issue (i.e., petitioner had been employed 18 months in his new position as a concrete truck dispatcher at the John Day Dam construction site by the beginning of 1966). Therefore, as we held in Ronald D. Kroll, supra, at page 562, the situs of such employment at least then "becomes the *201 taxpayer's home." On brief petitioner disputes that he could have reasonably known that he would be employed in his new position at the John Day Dam construction site for a long period of time citing Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959). In the Harvey case, the Ninth Circuit 765 formulated the following test at page 495 of its opinion: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. On the other hand, if it is very likely that taxpayer's stay away from home will be short; then it seems quite unreasonable to expect him to move his domicile, * * *. Under the facts in the record before us, it is difficult to perceive how petitioner could not have known with reasonable probability that his position as a concrete truck dispatcher *202 on the construction of the John Day Dam would continue for a long period of time. Indeed, the following quotation from petitioner's own testimony before us indicates that he did know ab initio that the job would be one of long duration: Q. When you went to this job, what was your state of mind as to its permanency? A. At first, I thought it was going to be a fairly decent long job until I got in an argument with the superintendent. Then, after that, I didn't know. Petitioner argues further that it was not feasible for his family to live near the construction site due to the unavailability of suitable housing in the area, relying upon Wright v. Hartsell, 305 F. 2d 221 (C.A. 9, 1962). That case involved a construction worker who was employed at an Atomic Energy Commission site located in a vast desert remote from any town or other place of habitation. The Ninth Circuit held the taxpayer's transportation costs between the nearest habitable community and the work site to be deductible travel expenses. In so holding, the court explained its ratio decidendi in part as follows: The fundamental question in determining if an expense claimed as travel expense is dictated *203 by the "exigencies of business" is whether it would be reasonable to expect the particular taxpayer to move his home nearer to the place where he is working. It is difficult to conceive of a situation which makes it more necessary for a taxpayer to incur travel expenses than the unfitness of the work area for civilized habitation. Such a taxpayer has less choice with respect to his place of abode than the taxpayer who prefers not to live in his work area simply because of the temporary nature of his employment there * * *. The case of Wright v. Hartsell is totally inapposite to the case at bar. The area surrounding the John Day Dam construction site was fit for civilized habitation, as evidenced by the fact that petitioner did in fact live there throughout the period in question. Furthermore, petitioner has failed to prove his contention that suitable housing for his seven-member family was unavailable in the vicinity of the construction site. The only evidence on this point was petitioner's own testimony to the effect that upon receiving notice from his landlord that the family would soon have to move from their rented home near Wasco and prior to moving his family to Lyons, he *204 was unable despite a diligent search to locate other housing in either Rufus or Wasco suitable for a family of seven. However, petitioner admitted at trial that he did not make any further attempt to locate housing for his family in the vicinity of the construction site after accepting new employment at the John Day Dam shortly after July of 1964. Moreover, respondent points out that the city of The Dalles, Oregon, with a population of approximately 11,700 persons and ample housing, was located approximately 30 miles from the construction site. Petitioner contends that the highway between The Dalles and the John Day Dam construction site was under construction during 1966, resulting in delays that would have caused him to spend two hours or more traveling the one-way distance between the two points. However this may be, from the map of Oregon in evidence herein we note the existence of a number of towns in the vicinity of the construction site which appear to be at least the size of Lyons (population approximately 600). We find it difficult to believe that when the petitioner purchased his mother-in-law's home, which was situated in Lyons (approximately 150 miles from the construction *205 site), it was the closest available housing for his family of seven. In view of the foregoing, we hold that the meals, lodging, and transportation expenses incurred by petitioner in the vicinity of the John Day Dam construction site during 1966 are not deductible "away from home" expenses under section 162(a)(2), but instead were nondeductible personal, living expenses under section 262. Accordingly, Decision will be entered for the respondent. 766 Footnotes
1. Unless otherwise designated, all future statutory references are to the Internal Revenue Code of 1954.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩