Douglas A. Mazzotta and Ellen Mazzotta v. Commissioner.
Mazzotta v. Commissioner
Docket No. 2289-70 SC.
United States Tax Court
T.C. Memo 1971-227; 1971 Tax Ct. Memo LEXIS 101; 30 T.C.M. (CCH) 976; T.C.M. (RIA) 71227; September 8, 1971, filed Douglas A. Mazzotta, pro se, 16910 West 11 Mile Road, Southfield, Mich.Gary F. Walker, for the respondent. CALDWELL
Memorandum Findings of Fact and Opinion CALDWELL, Commissioner: Respondent determined a deficiency in petitioners' income tax for the calendar year 1967 in the amount of $75.95. The sole question for decision is whether petitioners are entitled to a claimed deduction of $908, as traveling and living expenses incurred by petitioner while away from home in pursuit of a trade or business, within the meaning of section 162(a)(2), of the Internal Revenue Code of 1954. Respondent conceded at trial that petitioner Douglas Mazzotta had actually *102 expended the $908; and he does not argue that the expenses were not "in pursuit of a trade or business." Consequently, the narrow question for decision is whether the petitioner was "away from home" within the meaning of the statute. Findings of Fact Some of the facts were stipulated. The stipulation of facts and the supplemental stipulation of facts, together with the exhibits thereto attached, are incorporated herein by reference. Petitioners Douglas and Ellen Mazzotta are husband and wife, and at the time of filing their petition in this case, they resided in Southfield, Michigan. They filed their 1967 income tax return on a cash basis of accounting with the district director of internal revenue at the service center in Cincinnati, Ohio. An amended return for the taxable year 1967 was also filed at the service center on April 15, 1969. Douglas Mazzotta will be referred to herein as the petitioner. Petitioner began teaching in the Detroit Public School System in or about 1957. On November 6, 1962, the Michigan State Board of Education granted to petitioner a State Secondary Permanent Certificate, to teach in the public schools of Michigan all subjects in grades seven and *103 eight, and science, chemistry, and mathematics in grades nine through twelve. On or about December 10, 1962, petitioner and the Board of Education of the city of Detroit entered into a "Teacher's Continuing Contract" which provided in the first paragraph thereof as follows: The undersigned is hereby given a contract for services as a teacher which shall continue in effect from (date) 12-10-62, for this and the succeeding school years, in accordance with the rules and regulations of the Board of Education, until such teacher resigns, elects to retire, is retired or is dismissed for reasonable and just cause after a fair hearing. In 1964, petitioner received a master's degree in psychology from the University of Detroit in Detroit, Michigan. During the spring school term of 1966, petitioner was employed in a teaching status by the Detroit Board of Education at Hampton Junior High School in Detroit, Michigan. Petitioner became eligible in 1966 for one school year's leave with half pay (sabbatical leave). He elected to take a sabbatical leave from September 1966 to June 1967. While on such leave, and from January to June 1967, he attended Wayne 977 State University in Detroit, *104 as a full-time student. The rules and regulations of the Detroit Public Schools with respect to sabbatical leave required a teacher granted such leave "to return to service with the Detroit Board of Education immediately upon termination of sabbatical leave and continue in such service for a period of one year (unless causes beyond his control prevent), or to refund any compensation received from the Board of Education while on leave except as the Board of Education shall, by special action, waive such obligation." Those rules and regulations further provided: VI. Status Upon Return from Sabbatical Leave A teacher, upon return from Sabbatical leave of absence, shall enjoy the following privileges and benefits: A. Be restored to his former teaching position or to a position of like nature, seniority, status, and pay. B. Be allowed credit toward retirement for the time spent on sabbatical leave, * * * In the early summer of 1967, petitioner was offered a teaching assignment by the Detroit Board of Education for the school year 1967-68. Petitioner was unwilling to accept this offer, for the reasons that conditions at the school specified in the offer were very chaotic resulting *105 in a high turnover rate among the faculty, and petitioner believed that his seniority as a teacher in the Detroit Public School System entitled him to a better position. Petitioner ascertained that there were other positions in the Detroit school system which were open and which he would have been willing to accept. However, no position in the Detroit school system other than the one which he had declined, was offered to him at that time. While petitioner was unwilling, for reasons dictated by his intention to protect his professional integrity as a teacher, to accept the proffered position, he did not desire or intend to sever his life-term contract with the Detroit school system and to lose the benefits to which his seniority entitled him. He believed that his side in the dispute with the school system would be sustained and that he would be offered a teaching position commensurate with his seniority, a position which he could and would accept. In the meantime, and until his differences with the Detroit school system could be resolved, petitioner sought and obtained, at a salary of $2000 less than he would have received from the Detroit school system, a position as an instructor *106 in psychology for the academic year 1967-68 at the Cuyahoga Community College, which was located in or near Cleveland, Ohio. Petitioner took an apartment in the Cleveland suburb of Parma Heights, and during the period of September-December 1967, he incurred and paid expenses of $908 for travel, meals, lodging, electricity, and telephone. Petitioner's wife and his three sons continued to reside at the family's residence in Southfield. Almost every Friday afternoon petitioner would return to Southfield, and on the following Sunday drive back to Parma Heights. [1]
On February 15, 1968, the Board of Education of the city of Detroit filed a complaint in the Oakland County Circuit Court against the petitioner, in which the board sought recovery from petitioner of $5,113.92, being the amount which the board paid to or for petitioner's benefit during the period of his sabbatical leave. The board alleged in the complaint, among other things, the following: 5. That the Plaintiff granted Sabbatical Leave to its employee, *107 the Defendant, for the period commencing July 1, 1966, to July 1, 1967, under certain conditions, among which were the following: a. That upon conclusion of the Sabbatical Leave, ending July 1, 1967, the defendant was to return immediately to an active teaching assignment. b. The Plaintiff agreed to and did pay to the Defendant the sum of $5,113.92 as full compensation during the aforesaid Sabbatical Leave, broken down as follows: Total gross salary paid while on Sabbatical Leave 9/5/66 through 6/23/67
$4,800.00
Board subsidy of medical-surgical insurance
110.58
Life Insurance (fringe benefit)
8.70
F.I.C.A.
187.20
Workmen's Compensation 7.44
Total
$5,113.92
c. That upon failure of the Defendant to return to active teaching in the school 978 system of the Plaintiff at the beginning of the school year commencing in September 1967, the Defendant would be required to make full refund of all monies paid as salary while on said Sabbatical Leave. * * * 10. That the Defendant has refused to return to a teaching position in the Plaintiff's schools, contrary to the agreement aforesaid between the parties hereto. Petitioner was served with a copy of the *108 Board's complaint, and he thereupon retained an attorney to represent him. An answer was filed on March 21, 1968. The case never came to trial, but was apparently dismissed after petitioner's attorney made two or three telephone calls to the Board or to its attorney. Thereafter, petitioner was offered and he accepted, a teaching position in science at a Detroit high school, as reflected in the following letter dated May 24, 1968, to petitioner from the assistant director of personnel for the Detroit Public Schools: Dear Mr. Mazzotta: In accordance with your request in your letter of February 17, 1968, and my conversation with you by phone this morning, you are to report to a teaching position in Physical Science at Denby High School for the school year 1968-69. Since you were paid on the tenth step of the salary schedule during your Sabbatical Leave of Absence, you will be returned at the eleventh step of the salary schedule, which will be $11,700. Please report to the orientation meeting at Denby on Tuesday, September 3, 1968, at 9:00 a. m. On the amended return which petitioner and his wife filed for the year 1967, petitioner claimed a deduction of $908 for travel, meals, *109 lodging, electricity and telephone, incurred by him during the period from September 11, 1967, to December 20, 1967. The respondent disallowed the claimed deduction in the statutory notice of deficiency issued to petitioner and his wife for 1967. Opinion In this Court's recent opinion in Truman C. Tucker, 55 T.C. 783, the "appropriate criteria" for determining whether expenses such as are involved in the instant case are deductible under section 162(a)(2), I.R.C. 1954, were stated as follows (55 T.C., p. 786): The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Ronald D. Kroll, 49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a principal place of employment goes elsewhere to take work which is merely temporary, he may deduct the living expenses incurred at the temporary post of duty, because it would not be reasonable to expect him to move his residence under such circumstances, *110 Emil J. Michaels, 53 T.C. 269 (1969); Ronald D. Kroll, supra. For this purpose, temporary employment is the type which can be expected to last for only a short period of time. Beatrice H. Albert, 13 T.C. 129, 131 (1949). On the other hand, if a taxpayer chooses for personal reasons to maintain a family residence far from his principal place of employment, then his additional traveling and living expenses are incurred as a result of that personal choice, and are therefore not deductible. Commissioner v. Flowers, supra; Ronald D. Kroll, supra, at 561-562; Floyd Garlock, 34 T.C. 611, 614 (1960); Mort L. Bixler, 5 B.T.A. 1181, 1184 (1927). Similarly, if a taxpayer accepts indefinite employment outside the vicinity in which he lives, but he does not change his family residence, the travel to his new place of employment and the additional living costs which he incurs there result, not from his employment, but from his decision not to move his residence. Rendell Owens, 50 T.C. 577 (1968); Maurice M. Wills, 48 T.C. 308 (1967), affd. 411 F. 2d 537 (C.A. 9, 1969). Thus, the *111 deductibility of traveling expenses and duplicate living expenses depends upon the ultimate question of whether the taxpayer, under all the circumstances, could reasonably have been expected to move his residence to the vicinity of his employment. Applying those criteria to the circumstances of this case, we believe that petitioner was "away from home" during the fall of 1967 and is therefore entitled to the disputed deduction. In essence, it is our belief that the Detroit area, unquestionably petitioner's "tax home" for the approximately ten years prior to the year 1967, when he lived and taught school in Detroit, continued to be such during the short period of time he was living in the Cleveland area. 979 We are satisfied from having seen and heard the petitioner testify and from a consideration of the record in its entirety that the petitioner's aim and desire, which he was confident that he would realize and which he did in fact realize, was to preserve his tenure in the Detroit schools, and that the teaching position in Ohio which he sought and obtained was only a stop-gap, a temporary arrangement for one academic year, to permit him to earn enough to care for his family *112 until his differences with the Detroit School System could be resolved. In those circumstances, it would not have been the reasonable thing to do for petitioner to have uprooted his family and moved them to Ohio. The duplicate living expenses which petitioner thus incurred in Ohio were dicated by the exigencies of petitioner's trade or business and not by petitioner's personal choice. Respondent has placed strong reliance on the Tucker case, supra. In our view, that case presents a factual pattern differing in a critical aspect from the case at bar. In Tucker, the taxpayer had no long-standing "tax home" at Knoxville, Tennessee, from which he absented himself on his Georgia and North Carolina teaching assignments. Petitioner's situation in the instant case with respect to Detroit and his teaching assignment in Ohio is different, as has been pointed out above. We hold that petitioner is entitled to the claimed deduction. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for petitioners. Footnotes
1. Petitioner included in the deduction involved herein only the cost of one round-trip between Southfield and Parma Heights: 360 miles at 10 cents per mile, or $36.↩