T.C. Summary Opinion 2005-178


UNITED STATES TAX COURT


SANDRA R. MURRAY AND KHALED M. ABOUELNOOR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16141-04S.            Filed December 5, 2005.


Sandra R. Murray and Khaled M. Abouelnoor, pro sese.

<u>Hieu C. Nguyen</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  The decision to be entered

---

[1] Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2002,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2002 of $2,747. The deficiency is attributable solely to the alternative minimum tax (AMT) prescribed by section 55.

The only issue for decision is whether petitioners are liable for the AMT as determined by respondent in the notice of deficiency. We hold that they are.

<u>Background</u>

The parties submitted this case fully stipulated pursuant to Rule 122, and the stipulated facts are so found.

At the time that the petition was filed, petitioners resided in Buena Park, California.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2002. On their return, petitioners claimed two exemptions for themselves, which served to decrease their taxable income by $6,000. In addition, petitioners itemized their deductions on Schedule A, Itemized Deductions, for the following expenses: (1) Medical and dental expenses (in excess of 7.5 percent of petitioners' adjusted gross income) of $1,079; (2) State and local income taxes of $603; (3) charitable contributions of $200; and (4) miscellaneous deductions (in excess of 2 percent of petitioners' adjusted gross income) of

$55,302.  On their return, petitioners reported zero taxable income on line 41,[2] zero tax on line 55, and an overpayment of tax of $3,085 on line 71a attributable to withholding.  See secs. 1(a)(1), 3(a), (c).  Petitioners did not report any items of tax preference as defined by section 57 on their return.

Petitioners did not report any liability for the AMT on line 43 of their return, and they did not complete or attach to their return Form 6251, Alternative Minimum Tax--Individuals.

Thereafter, respondent sent petitioners a letter dated April 28, 2003, requesting additional information and stating that petitioner should file Form 6251.  Soon thereafter, petitioners provided to respondent information expressing their view that they were not liable for the AMT.  Within 4 to 6 weeks, respondent issued a refund to petitioners.

The following year, respondent commenced an examination of petitioners' 2002 return.  In connection with the examination, respondent sent petitioners a 30-day letter dated March 24, 2004, explaining proposed changes to petitioners' taxable year 2002 resulting from their liability for the AMT.

Petitioners responded by letter dated April 3, 2004, stating that the proposed changes were incorrect.  In this regard, petitioners relied on their 2003 letter to respondent, which stated that they were not liable for the AMT because they did not

---

[2]  Mathematically, petitioners' taxable income is -$2,209.

have any AMT adjustments or tax preference items.  Petitioners further stated in the April 3, 2004 letter that respondent issued a full refund because "the IRS would have never given a full refund, if our supported items and documentation was [sic] not excepted [sic]."

Respondent sent petitioners a letter dated June 23, 2004, confirming proposed adjustments for the AMT.

Petitioners responded by letter dated July 3, 2004, again stating that they were not liable for the AMT.

On August 16, 2004, respondent issued a notice of deficiency to petitioners.  In the notice of deficiency, respondent did not disallow any of the deductions or exemptions claimed by petitioners on their return for purposes of the income tax imposed by section 3(a).  See secs. 1(a)(1), 3(c).  Respondent, however, determined that petitioners are liable for the AMT under section 55 in the amount of $2,747 as follows:

| | |
|---|---|
| Form 1040, line 39 | [1]$3,790 |
| plus: adjustments and preferences | |
|     (1) medical/dental expenses | [2]1,079 |
|     (2) State/local income taxes | 603 |
|     (3) miscellaneous deductions | [3]55,303 |
| less: refund of taxes | -1,210 |
| alternative minimum taxable income | 59,565 |
| less: exemption amount | -49,000 |
| taxable excess | 10,565 |
| applicable AMT rate | 26% |
| tentative minimum tax | 2,747 |
| less: regular tax[4] | 0 |
| AMT | 2,747 |

[1] We note that petitioners reported $3,791 on line 39; the difference is of no significance. Line 39 of Form 1040 represents adjusted gross income less itemized deductions. Line 39 precedes the line on which personal exemptions are claimed. The AMT computation effectively serves to disallow all personal exemptions.

[2] Medical expenses in excess of 7.5 percent, but less than 10 percent, of adjusted gross income as reported by petitioners on their return.

[3] We note that petitioners reported miscellaneous deductions of $55,302; the difference is of no significance.

[4] As reported by petitioners on line 55 of their return.

Petitioners filed with the Court a timely amended petition for redetermination. Paragraph 4 of the amended petition states in relevant part:

> I received a letter from IRS, Fresno, stating AMT tax owed and refund pending. Explanation forward to IRS, Fresno, why AMT tax not owed. Full refund and explanation excepted [sic] a few wks later by IRS, Fresno. A yr later 2004, IRS, PA, stating that AMT tax owed again for same yr 2002. We are contesting in US Tax Court, that full refund issued, paperwork excepted [sic], and case 2002 was closed. IRS, PA, is not accepting our explanations and findings. This matter is completely wrong in money owed.

## Discussion[3]

Petitioners contend that they are not liable for the AMT because they do not have any AMT adjustments or tax preferences. Petitioners rely on Publication 17, Your Federal Income Tax, and on the 2002 Form 1040 Instructions to support their contention that they do not have any adjustments or preferences that would trigger the AMT. We disagree.

First, we observe that the authoritative sources of Federal tax law are the statutes, regulations, and judicial decisions and not informal publications distributed by the Internal Revenue Service such as Publication 17 or the 2002 Form 1040 Instructions. Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. 614 F.2d 1294 (2d Cir. 1979). Nevertheless, we note that Publication 17 correctly states:

> You may have to pay the alternative minimum tax if your taxable income for regular tax purposes, combined with certain adjustments and tax preference items, is more than * * * $49,000 if your filing status is married filing joint * * *

Publication 17 then goes on to list the more common adjustments, specifically including most miscellaneous itemized deductions. We note further that the 2002 Form 1040 Instructions for line 43, Alternative Minimum Tax, instruct a taxpayer to use a specific worksheet to determine whether the taxpayer should complete Form

---

[3] We decide the issue in this case without regard to the burden of proof under sec. 7491(a) because the issue is essentially one of law.

6251.  Use of this worksheet demonstrates that petitioners should have completed Form 6251.

Second, we observe that the AMT is imposed in addition to the "regular tax", which is, in general, the income tax computed on taxable income by reference to the tax table or rate schedule. Secs. 26(b), 55(a), (c)(1); see secs. 1(a)(1), 3(a).  Petitioners reported zero regular tax for 2002 on line 55 of their return.

Therefore, we now turn to section 55 that imposes the AMT. The AMT is the difference between the "tentative minimum tax" and the regular tax.  Sec. 55(a).  As relevant herein, the tentative minimum tax is 26 percent of the excess of a taxpayer's "alternative minimum taxable income" over an exemption amount of $49,000.  Sec. 55(b)(1)(A)(i)(I), (b)(2), (d)(1)(A)(i).

As relevant herein, section 55(b)(2) defines alternative minimum taxable income as the taxpayer's taxable income for the taxable year determined with the adjustments provided in section 56 and increased by the amount of items of tax preference described in section 57.[4]  As previously stated, petitioners had no items of tax preference in 2002.  Therefore, the alternative minimum taxable income is petitioners' taxable income determined with the adjustments provided in section 56.

---

[4] As relevant herein, sec. 63 defines taxable income as adjusted gross income less (1) Schedule A itemized deductions and (2) personal exemptions.

There are five adjustments under section 56(b) that are relevant herein in computing petitioners' alternative minimum taxable income. First, section 56(b)(1)(D) provides that a deduction shall be allowed for taxable refunds allowable in computing adjusted gross income. Second, section 56(b)(1)(A)(i) provides that no deduction shall be allowed for any miscellaneous itemized deduction as defined in section 67(b). Third, section 56(b)(1)(A)(ii) provides that no deduction shall be allowed for any State and local income taxes. Fourth, section 56(b)(1)(B) provides that medical and dental expenses shall be deductible only to the extent that such expenses exceed 10 percent of the taxpayer's adjusted gross income. Fifth, section 56(b)(1)(E) provides that no personal exemptions shall be allowed.[5]

The effect of the first adjustment is to decrease petitioners' taxable income by $1,210, the amount of petitioners' taxable refund. The effect of the last four adjustments is to increase petitioners' taxable income by: (1) $55,302, the amount claimed by petitioners on their Schedule A for miscellaneous

---

[5] Although respondent's computation in the notice of deficiency of alternative minimum taxable income shortcuts the statutory formula, respondent's computation yields the same amount of alternative minimum taxable income as does the statutory formula. Specifically, respondent computes petitioners' taxable income with petitioners' adjusted gross income less Schedule A itemized deductions without including personal exemptions, but he compensates for this omission by not including personal exemptions within the adjustments of sec. 56(b) in computing the alternative minimum taxable income.

deductions; (2) $603, the amount claimed by petitioners on their Schedule A for State and local income taxes; (3) $1,079, the amount claimed by petitioners on their Schedule A for medical and dental expenses that exceeded 7.5 percent but not 10 percent of their adjusted gross income; and (4) $6,000, the amount claimed by petitioners on their Form 1040 for two personal exemptions. The sum of these five adjustments is $61,774.

Petitioners' alternative minimum taxable income, after taking into account the foregoing five adjustments, for 2002 is $59,565; i.e., -$2,209 taxable income plus adjustments of $61,774. It follows that the alternative minimum taxable income exceeds the applicable exemption amount of $49,000 by $10,565. See sec. 55(d)(1)(A)(i). Petitioners' tentative minimum tax is therefore 26 percent of the taxable excess; i.e., 26 percent of $10,565, or $2,747. See sec. 55(b)(1)(A)(i)(I). Clearly, because the tentative minimum tax exceeds the regular tax of zero, petitioners are liable for the AMT of $2,747. See sec. 55(a).

As the foregoing discussion reveals, the statutory scheme of the AMT imposes a tax whenever the sum of specified percentages of the excess of alternative minimum taxable income over the applicable exemption amount exceeds the regular tax for the taxable year. See sec. 55(a), (b)(1)(A), (c), and (d)(1)(A). In other words, alternative minimum taxable income is the taxpayer's

taxable income for the taxable year determined with the adjustments provided in section 56 and increased by the amount of items of tax preference described in section 57. As stated earlier, petitioners did not have any items of tax preference as defined by section 57. The items of tax preference, however, are only one part of the AMT computation. See Huntsberry v. Commissioner, 83 T.C. 742, 744-745 (1984) (tax preferences play a part in computing alternative minimum tax, but a taxpayer may be liable for the AMT even though he may not have any tax preferences). More significantly, although many of the adjustments provided in section 56 do not apply to petitioners, there are five adjustments that clearly apply here, the largest of which is petitioners' miscellaneous deductions that increase their alternative minimum taxable income by $55,503. See sec. 56(b)(1)(A)(i).

However unfair this statute might seem to petitioners, the Court is bound to apply the law as written. See Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171-1174 (7th Cir. 1984), affg. 80 T.C. 783 (1983). Accordingly, the statutory provisions of section 55 impose the AMT of $2,747. We therefore sustain respondent's determination on this issue.

Petitioners argue, however, that respondent should be estopped from assessing a deficiency for 2002 because respondent

accepted their return and issued them a refund as claimed on their return. Petitioners' argument is without merit.

A refund is not binding on respondent in the absence of a closing agreement, valid compromise, or final adjudication. Meridian Mut. Ins. Co. v. Commissioner, 44 T.C. 375, 379 (1965), affd. 369 F.2d 508 (7th Cir. 1966). Further, it is well settled that the granting of a refund does not preclude respondent from issuing a notice of deficiency merely because he accepted a taxpayer's return and issued a refund. O'Bryant v. United States, 49 F.3d 340, 342 (7th Cir 1995); Gordon v. United States, 757 F.2d 1157, 1160 (11th Cir. 1985); Beer v. Commissioner, 733 F.2d 435, 437 (6th Cir. 1984), affg. T.C. Memo. 1982-735; Warner v. Commissioner, 526 F.2d 1, 2 (9th Cir. 1975), affg. T.C. Memo. 1974-243; Baasch v. Commissioner, T.C. Memo. 1991-134, affd. without published opinion (2d Cir. 1992). Furthermore, we note that refunds of alleged excess withholdings without prior audit are a matter of grace to the taxpayer, made in consequence of an amount due as shown on the return, and are subject to final audit and adjustment; therefore, such refunds are not final determinations so as to preclude subsequent adjustment. Clark v. Commissioner, 158 F.2d 851 (6th Cir. 1946), affg. a Memorandum Opinion of this Court; Owens v. Commissioner, 50 T.C. 577 (1968). We have previously denied estoppel claims of taxpayers based on the same argument that petitioners in the instant case have made.

Warner v. Commissioner, supra at 2 ("the Commissioner, confronted by millions of returns and an economy which repeatedly must be nourished by quick refunds, must first pay and then look.  This necessity cannot serve as the basis of an 'estoppel'."); see, e.g., Brown v. Commissioner, T.C. Memo. 1996-100, affd. 181 F.3d 99 (6th Cir. 1999); Wilson v. Commissioner, T.C. Memo. 1991-491. We therefore reject petitioners' estoppel claim in the instant case.

## Conclusion

We have considered all of the other arguments made by petitioners, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues,

Decision will be entered

for respondent.