RONALD D. KROLL, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 139–66.    Filed February 29, 1968.

*Eugene Lyle Stoler*, for the petitioner.
*Paul H. Frankel* and *Robert S. Gorin*, for the respondent.

OPINION

Each of the issues in this case involves the deductibility of certain claimed expenses. The parties appear to assume, and we agree, that should any of the expenses in question be business expenses attributable to the petitioner's income, the fact that payment of these expenses was made by his parents rather than by him will not prevent them from being deductible from the petitioner's gross income. See sec. 73.

The first issue concerns the deductibility of meal and lodging expenses incurred by the petitioner while he lived in New York City in 1963. The record does not indicate what part of the claimed $924 deduction for rent is attributable to the petitioner's own lodging, and what part is attributable to lodging of his mother, the expenses of whom are discussed in the third part of this opinion. In the view we take of the case, it is not necessary for us to make a finding on this point.

The petitioner argues that these expenses are deductible as traveling expenses incurred while he was away from home in pursuit of a trade or business, under section 162(a)(2)[3] or section 212.[4] The respondent argues that they were personal, living, or family expenses, nondeductible under section 262.[5]

A taxpayer's expenses for his own food and lodging are clearly "personal, living, or family expenses," and therefore they are nondeductible unless expressly permitted by some other section, in this case section 162 or section 212. See sec. 1–262–1(b)(3) and (5), Income Tax Regs. It is not disputed in the present case that the petitioner was engaged in the trade or business of acting within the meaning of section 162. Since it is claimed that the expenses in question were incurred in connection with that trade or business, a decision as to whether they are deductible under section 162 will dispose of the issue, and section 212 is inapplicable. The respondent is correct in arguing that section 212 refers to expenses connected with gainful activities which fall short of a trade or business. That section "merely enlarged the category of incomes with reference to which expenses were deductible. It did not enlarge the range of allowable deductions." *McDonald* v. *Commissioner*, 323 U.S. 57, 62 (1944). Therefore, the expenses in question here are either allowable under section 162(a)(2) or they are not allowable at all.

This Court has long and consistently held that "home" as used in section 162 means the vicinity of the taxpayer's principal place of

---

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and

[4] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

[5] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. E.g., *Howe A. Stidger*, 40 T.C. 896 (1963), revd. 355 F. 2d 294 (C.A. 9, 1965), revd. 386 U.S. 287 (1967); *Leo M. Verner*, 39 T.C. 749 (1963); *Mort L. Bixler*, 5 B.T.A. 1181 (1927).

But if a taxpayer has a principal place of employment in one location and accepts temporary work at another location, his presence at the second location is regarded as "away from home." *E. G. Leach*, 12 T.C. 20 (1949); *Harry F. Schurer*, 3 T.C. 544 (1944). However, if the taxpayer, having a principal place of employment in one location, accepts work at another location which is not temporary but is of indefinite or indeterminate period, his presence at the second location is not regarded as "away from home." *Commissioner* v. *Peurifoy*, 254 F. 2d 483 (C.A. 4, 1957), reversing 27 T.C. 149 (1956), affirmed per curiam 358 U.S. 59 (1958). Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home. *Leo M. Verner, supra; Arnold P. Bark*, 6 T.C. 851 (1946).

The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. *Leo M. Verner, supra; James* v. *United States*, 308 F. 2d 204 (C.A. 9, 1962). The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks the question whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of living expenses, which are of course nondeductible under section 262. If it is reasonable so to expect, as where a taxpayer has only one post of duty, which is permanent, then if he in fact chooses to maintain his residence elsewhere and incur living expenses near his trade or business as well, the duplication of expenses thereby resulting arises not from the needs of his business but from the taxpayer's personal choice. When, then, a taxpayer moves to a new permanent post of employment, it is generally reasonable to expect him to move his residence as well, and if he does not do so, and thereby incurs living expenses at his new post of employment while maintaining his old residence, the duplication again does not arise from business needs, but from personal considerations. If, however, the taxpayer's stay at the new post of business is to be temporary—"the sort of employment in which termination within a short period could be foreseen" (*Beatrice H. Albert*, 13 T.C. 129, 131 (1949)—it is not reasonable to expect him to move his residence; so if he incurs living expenses at the temporary post, these are traveling expenses required

by the trade or business rather than by personal choice, and they are therefore deductible. *Leo M. Verner, supra; Harry F. Schurer, supra.*

Here it is clear that the petitioner's stay in New York was not temporary. When he first went to New York to take a part in "Oliver!," he had no reason to believe that that show would not have a long and successful engagement, since it had had a successful preopening tour. Indeed, it would be unreasonable to believe he took the part expecting the show to be a failure. Moreover, the fact that 6 months after he came to New York he left "Oliver!" to take a part in another play indicates that he did not intend to have the duration of his employment away from Meriden depend on the success or failure of only one play. His subsequent acceptance of the title role in "Oliver!" under a 15-month contract further shows his intention to stay in New York as long as he could have an acting part. These facts, taken in conjunction with the fact that he remained away from Meriden a total of 2½ years, and lived in New York for 2 of those years, lead to the conclusion that in 1963 he foresaw no limits on his stay in New York City, and that he intended to stay in acting as long as he could.

Several factors, it is argued, weigh against this conclusion. First, the petitioner's parents testified that they intended the petitioner to stay in New York City only if he liked the city and liked acting. However, in many cases, if not every case, where a person takes new employment in a new place, there is the possibility that he will not like the job or the new place, and will return to the place from which he came. There is nothing in the record to indicate that when the petitioner went to New York there was any more than the normal possibility that he would not be happy there. Moreover, all his activities during 1963 indicate that, in fact, he wanted to stay in acting in New York. Thus, the possibility of unhappiness in New York was not a serious limitation on the expected or actual duration of the petitioner's absence from Meriden.

He then points to the fact that there was no lease on either of the New York apartments. But this is not surprising. The very fact that the petitioner and his mother and brother moved from one apartment in New York City to another indicates that they were aware of the desirability of being flexible to move within New York City if they chose. A lease would have seriously curtailed this flexibility. Furthermore, because the petitioner could not say with exactitude how long he would be in New York City, it was obviously the more prudent decision to take lodgings without a lease, if possible. Therefore, the absence of a lease does not indicate that the petitioner expected that his stay would be of short duration.

Next, the fact that the petitioner visited Meriden when he could weighs in favor of, rather than against, our conclusion. Undoubtedly,

the fact that the petitioner was able frequently to visit his father made the prospect of an extended stay in New York City more acceptable to him and his parents than it might have been otherwise.

Finally, it is argued that the petitioner was a child actor and that the availability of roles depended on his not growing too tall for child parts. Support for the argument is drawn from the clause in his contract with David Merrick covering his performance as Oliver, giving the manager of the play authority to terminate the contract if the petitioner grew too tall for the part. First, we have already concluded that petitioner's stay in New York did not depend on his being employed in the "Oliver!" company. There is no real indication that even if the petitioner had grown too tall for that play, he could not have found a role requiring a taller child in another play. Secondly, and more importantly, there is no indication as to how tall "too tall" might have been for the Oliver role. Similarly, there is no evidence as to the petitioner's height in 1963 or his rate of growth. In short, even if the record showed that the petitioner's growth was a limitation on his ability to get parts in plays, we do not have enough facts to evaluate that limitation.

For all these reasons, we conclude that the petitioner went to New York with the intention of staying there as long as he could find congenial employment in the acting profession. No expected or actual limitations on the availability of such roles have been proved. The duration of the stay turned out to be substantial. We therefore find that the petitioner's stay in New York was indefinite or indeterminate, rather than temporary from the outset, and that his tax home, therefore, was in New York in 1963.

The petitioner argues that instead of the temporary-indefinite test, we should apply the rule of *Harvey* v. *Commissioner*, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959). The Ninth Circuit there said:

> An employee might be said to change his tax home if there is a reasonable probability *known to him* that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. * * *

Our foregoing discussion shows that there was such a reasonable probability, and that it must have been known to the petitioner and his mother. We therefore find that even under the *Harvey* test, the petitioner's tax home was in New York during 1963.

The petitioner also argues that despite the duration of his stay away from Meriden, Meriden was his residence and therefore his "home" for purposes of section 162. This Court has long held that when a taxpayer maintains a residence away from the vicinity of his nontemporary principal place of business, that residence is not his home within

the meaning of section 162, and meal and lodging expenses incurred at his principal place of business are not deductible under that section. *Howe A. Stidger, supra; Leo M. Verner, supra; Mort L. Bixler, supra.* Cf. *O'Toole* v. *Commissioner*, 243 F. 2d 302 (C.A. 2, 1957), affirming per curiam a Memorandum Opinion of this Court. But the petitioner appears to argue that since his father maintained a principal place of business, and therefore a "tax home," in Meriden, Meriden was the tax home for each member of the family. However, although the tax laws do not direct members of a family to live apart, if they do undertake to engage in nontemporary employment in different localities, then the locality in which each member works becomes his tax home. *Robert A. Coerver*, 36 T.C. 252 (1961); *Arthur B. Hammond*, 20 T.C. 285 (1953), affd. 213 F. 2d 43 (C.A. 5, 1954); *Beatrice H. Albert*, 15 T.C. 350 (1950). Although these cases involved working wives rather than children, we see no reason to apply a different rule when a minor child engages in nontemporary employment away from his residence. Since the evidence shows that the petitioner's employment in New York City was not temporary by even the broadest standard, his claim that his tax home in 1963 was Meriden must fail.

Finally, the petitioner has failed to show that he incurred duplicate expenses by reason of business requirements. The only evidence tending to show that the petitioner incurred expenses in Meriden in addition to those incurred in New York was his father's testimony that petitioner's income was amalgamated with other family income and was used to pay family expenses. If his income was used to maintain the Meriden residence, such use resulted from the decision of his parents to use it for that purpose; it did not result from any need of the petitioner to maintain a home in Meriden as well as in New York. Thus, the duplication, if it existed, was not required by his employment in New York, but resulted from his parents' election to use his income to maintain the Meriden residence—a personal consideration. The petitioner does not, therefore, come within that class of taxpayers for whom Congress intended relief under section 162(a)(2).

For these reasons, the petitioner is not entitled to deduct the expenses of his food and lodging in New York City in 1963.

The second issue concerns the deductibility of tuition and fees paid to private schools attended by the petitioner during 1963. The petitioner pursued a normal grammar school curriculum and did not receive special training in the performing arts. The schools did, however, offer him benefits described in our findings of fact which made it easier for him to carry on his business of acting and go to school at the same time than it would have been had he attended public school.

The petitioner does not claim this deduction as an "education expense" under section 1.162–5, Income Tax Regs. He received no special training, and his purpose in going to school was not to satisfy the requirements of his employer or of his profession, or to maintain or improve his professional skills, but was rather to satisfy his own educational and personal aspirations and the requirements of the New York Compulsory Education Law. Considered as "educational expenses," they would clearly be disallowed under section 262 and section 1.262–1(b)(9), Income Tax Regs.

The petitioner argues, however, that these expenses should not be viewed as educational expenses but as expenses of buying time and flexibility properly to carry out the functions and needs of his profession. He argues that if his purpose had been simply to get an education, he would have attended a tuition-free public school; what the professional schools offered that the public schools did not was the opportunity to meet his professional commitments and still maintain his schooling; that therefore the expenditures for the private school tuition were made for business reasons, and were ordinary and necessary to the proper performance of his profession. More succinctly, the argument is that but for the requirements of his profession, the petitioner would not have incurred the claimed expenses.

This is another example of expenditures made to enable a taxpayer to carry on a trade or business but which are not incurred in the conduct of that trade or business. See 4A Mertens, Law of Federal Income Taxation, sec. 25.03, p. 8. Perhaps the most familiar such expenditures are those for commuting. Although necessary to permit a taxpayer to carry on his trade or business, in the sense that "but for" such expenditures, a taxpayer could not carry on that trade or business, commuting expenses have long been ruled to be personal expenses, and nondeductible. Sec. 1.162–2(e), Income Tax Regs.; *John C. Bruton*, 9 T.C. 882 (1947); *Frank H. Sullivan*, 1 B.T.A. 93 (1924). Another example is the expense of clothing. Although not denying that a person needs clothes to carry on a trade or business, the respondent has maintained, and this Court has held, that clothing expenses are personal and nondeductible except only where the particular uniform or item of clothing is "required or essential in an employment," and is "not suitable for general or personal wear and [is] not so worn." *Betsy Lusk Yeomans*, 30 T.C. 757, 767 (1958); *Louis M. Roth*, 17 T.C. 1450, 1455 (1952); *Helen Krusko Harsaghy*, 2 T.C. 484 (1943); *Eleanor E. Meier*, 2 T.C. 458 (1943); compare sec. 1.262–1(b)(8), Income Tax Regs. This test, we think, nicely illustrates the proposition that of those expenses necessary to the carrying on of a trade or business, only those incurred in the conduct of the trade or business are deductible.

This Court has previously considered whether the "but for" test is a sufficient basis for establishing deductibility in a case presenting a close analogy to the present case. In *Henry C. Smith*, 40 B.T.A. 1038 (1939), affirmed per curiam 113 F. 2d 114 (C.A. 2, 1940), the taxpayers, husband and wife, both of whom were employed, sought to deduct the amounts paid by the wife to nursemaids who cared for their young child. Their theory was that "but for" the nursemaid, the wife would not have been able to leave her child to earn taxable income, and that the expenditure was therefore deductible under the predecessor of section 162 as a business expense. The Court in rejecting this argument said:

This thought evokes an array of interesting possibilities. The fee to the doctor, but for whose healing service the earner of the family income could not leave his sickbed;[1] the cost of the laborer's raiment, for how can the world proceed about its business unclothed; the very home which gives us shelter and rest and the food which provides energy, might all by an extension of the same proposition be construed as necessary to the operation of business and to the creation of income. Yet these are the very essence of those "personal" expenses the deductibility of which is expressly denied. * * * [Footnote omitted. 40 B.T.A. at 1038–1039]

Recognizing that some normally personal expenses may become deductible by reason of their intimate connection with a profit-seeking enterprise, the Court then said:

But we think its principle is clear. It may for practical purposes be said to constitute a distinction between those activities which, as a matter of common acceptance and universal experience, are "ordinary" or usual as the direct accompaniment of business pursuits, on the one hand; and those which, though they may in some indirect and tenuous degree relate to the circumstances of a profitable occupation, are nevertheless personal in their nature, of a character applicable to human beings generally, and which exist on that plane regardless of the occupation, though not necessarily of the station in life, of the individuals concerned. * * * [40 B.T.A. at 1039–1049]

This case was followed in *Mildred A. O'Connor*, 6 T.C. 323 (1946), which, by the same reasoning, denied the deduction under the predecessors of section 162 and section 212 for child care expenses.[6] Cf. *Paul Bakewell, Jr.*, 23 T.C. 803 (1955), denying taxpayer a business expense deduction for the expense of a hearing aid, which, though used in and even necessary to the taxpayer's law practice, was "so personal as to preclude it from being a business expense."

These cases hold then that the fact that an expense would not have been incurred but for the taxpayer's engaging in a trade or business is not sufficient to allow a deduction; we must determine that the nature of the expense is not personal or otherwise of a nondeductible nature.

---

[6] The fact that Congress subsequently enacted sec. 214 allowing as a personal deduction a limited amount of child care expense in no way impairs the vitality of the reasoning in *Smith* and *O'Connor* as to the personal nature of such expenses.

Here it is clear from our previous discussion that what the petitioner purchased was a grammar school education. Although he argues that what he purchased was not an education but were the special arrangements necessary to his trade or business, it is manifest that the great bulk of the tuition paid was allocable to teachers, classrooms, and other elements of education. Moreover, we note that the most significant special arrangement sought and obtained by the petitioner, the primary benefit offered him by the private schools he attended, was the availability of prepared lessons which he could complete by correspondence in lieu of attending classes. Thus, the major item of the special arrangements, the prepared lessons, was as much a personal item as the other elements of the petitioner's education. The fact that the expenditures for education included an incidental amount for special arrangements that facilitated his acting career does not convert the entire cost of his education from a personal expenditure into a business expense.

We therefore hold that the expenditures for education were personal expenses rather than business expenses and are not deductible under section 162. They are therefore also not deductible under section 212 for reasons discussed in connection with the first issue in this case.

The third issue concerns the deductibility by the petitioner of his mother's food and lodging expenses in New York City. Insofar as these are claimed as part of his traveling expenses "away from home" in pursuit of business under section 162 or section 212, our holding that the petitioner was not "away from home" when he lived in New York City in 1963 serves to deny the deductibility of these expenses.

The petitioner also claims these expenses as guardian expenses deductible under section 212 and section 1.212–1(j), Income Tax Regs.[7]

This provision allows a deduction for "reasonable amounts paid or incurred for the services of a guardian * * * for a * * * minor, and other expenses of guardians * * * which are ordinary and necessary, in connection with the production or collection of income inuring to the * * * minor. "

The petitioner relies on a New York statute which provides that a minor who does not have the adequate supervision of a parent or guardian is in a condition of neglect. N.Y. Family Ct. Act sec. 312(b); N.Y. Soc. Welfare Law sec. 371(4)(b). He argues that because of this statute his mother's presence in New York was required in order that

[7] Sec. 1.212–1   Nontrade or business expenses.

(j)  Reasonable amounts paid or incurred for the services of a guardian or committee for a ward or minor, and other expenses of guardians and committees which are ordinary and necessary, in connection with the production or collection of income inuring to the ward or minor, or in connection with the management, conservation, or maintenance of property, held for the production of income, belonging to the ward or minor, are deductible.

he be able to earn income in New York and that therefore her expenses are expenses "attributable to" amounts includable in his gross income within the meaning of section 73(b), and incurred "in connection with" the production of income inuring to him under section 1.212–1(j), Income Tax Regs.

We cannot agree. Even if we assume that the petitioner paid, or should be treated as having paid, his mother's living expenses, they would be expenditures personal to him as well as to her. The New York statute relied on by the petitioner does not differentiate between working and nonworking children; all minor children should have the supervision of a parent or guardian. The petitioner's need of his mother's presence was as personal to him as his need for clothes, food, and a roof over his head, and even if he had not been working, but was only living in New York, he would have had the same need for the presence of his mother or other suitable guardian. He appears to argue, however, that but for the fact that he was engaged in the earning of income, he would not have come to New York at all and his mother would not have incurred the claimed expenses. However, we have already considered the "but for" test as a criterion of deductibility and have decided that it does not permit the deductibility of basically personal expenditures.

*Estate of Frederick Cecil Bartholomew*, 4 T.C. 349 (1944), relied on by the petitioner, is not in point. That case allowed a child actor to deduct one-half of the cash compensation paid to a chauffeur, who also served as a bodyguard, and who drove the petitioner on concededly business trips between the motion-picture studio and scene locations. That part of the compensation paid which was allocable to driving on business trips was of the same nature as the expenses of gas, oil, and wear and tear allocable to business use of an automobile and the Court held it similarly deductible.

We therefore conclude that the living expenses of the petitioner's mother were personal to her, and even if treated as paid by the petitioner, were personal to him, and were therefore not incurred "in connection with" the production of the petitioner's income within the meaning of section 1.212–1(j), Income Tax Regs., and section 212, and are nondeductible under section 262.

In summary, then, we hold that the respondent correctly disallowed deductions for the rent expense of the petitioner and his mother during their stay in New York City in 1963, and for tuition paid to the Professional Children's School and the Mace School in 1963. The petitioner is entitled to no deduction for amounts expended on food for him and his mother while they were in New York City in 1963.

*Decision will be entered for the respondent.*