Edward M. McKarzel, a/k/a Edward M. Mokarzel v. Commissioner.
McKarzel v. Commissioner
Docket No. 4866-69.
United States Tax Court
T.C. Memo 1971-91; 1971 Tax Ct. Memo LEXIS 238; 30 T.C.M. (CCH) 366; T.C.M. (RIA) 71091; April 29, 1971, Filed *238 The petitioner, who was an independent coastal pilot, maintained his residence and office in Poughkeepsie, New York. Although approximately one-third of his jobs began or ended in the New York City area, he worked in the area from Boston to Baltimore, and he incurred unreimbursed expenses in traveling to to and from his jobs. 367 Held: (1) Poughkeepsie was his home for tax purposes and his principal place of business; and (2) The petitioner failed to prove that a radio used in his business had an estimated useful life less than that determined by the respondent. Allan E. Rappleyea, 8 Lafayette Pl., Poughkeepsie, N. Y., for the petitioner. David W. Winters, for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined a deficiency of $708.06 in the petitioner's 1967 Federal income tax. The issues for decision are (1) whether a coastal pilot who worked out of Poughkeepsie, New York, may treat such place as his principal place of business and deduct the expenses of traveling therefrom, and (2) whether he has proved that a radio used in his trade or business had an estimated useful life less than that determined by the respondent. Findings *240 of Fact The petitioner, Edward M. McKarzel, a/k/a Edward M. Mokarzel, maintained his legal residence in Poughkeepsie, New York, at the time of filing his petition in this case. The petitioner is an independent ship pilot with many years' experience at sea. He was first licensed as a Hudson River pilot. Thereafter, through the years, he received various endorsements on his pilot's license which permitted him to pilot ships in certain ports, harbors, and estuaries along the east coast of the United States from Bucksport, Maine, to Norfolk, Virginia. He is a coastal pilot licensed Federally by the United States Coast Guard as a master of vessels of any gross tons in any waters. As a coastal pilot, the petitioner is not of duty outside of his residence. He is not a State pilot. Prior to 1963, the petitioner acquired extensive experience in handling various types of ships in various capacities. After a long career at sea in which he ultimately captained certain vessels, the petitioner decided to go into business on his own as an independent ship pilot. In 1963, the petitioner "went ashore" in order to develop his own pilot business. He then resided at 11 South Clinton Street, Poughkeepsie, *241 New York, and continued to reside at such address thereafter. He first solicited jobs from various steamship companies, making such solicitations by personal visit and by telephone. The petitioner's duties consisted primarily of providing local knowledge of the ports, harbors, and estuaries, in which he was licensed to operate ships navigating such areas. Such local knowledge included facts concerning such areas which are shown on certain charts as well as facts learned by the petitioner from experience and observation which were not shown on such charts and notices. The petitioner was expected to know generally each of such areas without regard to specific buoys or markers; it was necessary for him to recognize channels by means of landmarks other than those shown on charts, and to determine whether a particular marker or buoy had shifted from its proper location. The petitioner offered his services as an independent agent. In order to perform his duties, the petitioner had to travel from his residence in Poughkeepsie, New York, to various ports along the east coast of the United States to meet the vessel he was to pilot. In 1967, he sometimes piloted vessels from points at sea *242 to port, or from port to port, or from port to points at sea. Most often, he used his privately owned automobile to travel to and from his various jobs, but he also used public transportation, including plane, bus, taxi, and train. Sometimes he received notice well in advance of employment; at other times, such notice gave him barely enough time to reach the ship on which he was to be employed. The incidents of his employment followed no regular pattern. The petitioner accepted employment wherever and whenever it arose in the broad area in which he was qualified to operate. The petitioner maintained an office in his home. Such office was equipped with a desk, telephone, typewriter, adding machine, filing cabinet, bookcases, and chart table, and there was always someone to answer the telephone. In the office, he worked on his charts to keep them up-to-date with the latest information, studied the areas in which he had assignments, and performed his bookkeeping duties in connection with his jobs, including the preparation of vouchers and the maintenance of detailed expense records. 368 In 1967, the petitioner obtained most of his work through an association called Interport *243 Pilots, Inc. (Interport), of which he was not a member, officer, stockholder, or director. Interport was a Rhode Island corporation which maintained a telephone answering service on City Island, New York, but maintained no office in New York City or on City Island. The function of Interport was to broker the services of the petitioner and to notify him of the jobs for which he was hired. On completion of a job, he prepared a voucher, payable to himself and approved by the captain of the ship. He sent the voucher to Interport, which transmitted it to the shipowner for payment to the petitioner. The petitioner paid Interport a 10-percent commission for its services. Any losses arising out of his business would be borne by him. The petitioner also obtained jobs through other associations during the year in issue and solicited employment directly. In 1967, the petitioner piloted ships in the Boston, Rhode Island, Connecticut, New York City, Delaware Bay, Philadelphia, and Baltimore areas, as well as on the Hudson River between New York City and Albany. No jobs began or ended in Poughkeepsie. Approximately one-third of his jobs began or ended in the New York City area. It is about 70 *244 miles from Poughkeepsie to New York City and about the same distance from Poughkeepsie to Albany. Poughkeepsie is closer to the places where he worked in New England than is New York City, but it is further from the area south of New York City. During 1967, there was a tugboat strike in New York City, and during the strike, the petitioner was engaged to dock and undock ships. Such jobs constituted approximately one-third of the jobs he had during 1967 which either began or ended in the New York City area. During the strike, the petitioner was required to remain overnight in New York City, and he incurred expenses for meals and lodging while there. Most of the traveling expenses incurred by the petitioner were not reimbursed, but when he did receive reimbursement, it has been included in his income. In his determination, the respondent disallowed the deductions for the costs of traveling from Poughkeepsie to the New York City area and for the costs of meals and lodging incurred while staying there. In connection with his shipboard duties, the petitioner used a very high frequency radio. Such radio was used to communicate with other ships, shore installations, and bridges. Such *245 radio was portable and was sometimes carried in the petitioner's hand, in his pocket, or on a strap over his shoulder. The petitioner purchased such raido in 1965 with funds loaned to him. In 1967, he closed out the unpaid balance of the loan and on his 1967 return deducted as a current expense the final annual installment payment for such radio in the amount of $348.28. Such radio was still satisfactorily used by the petitioner in his business in July 1970. The respondent determined that such radio was a capital asset having a useful life of 6 years and disallowed the claimed deduction. Opinion The issues for decision are (1) whether the petitioner is entitled to deduct his expenses incurred for transportation, meals, and lodging in 1967, and (2) whether he is entitled to deduct the payment which he made in that year with respect to the purchase of the radio. The traveling expenses, if deductible at all, are deductible under section 162(a) of the Internal Revenue Code of 1954. [1] Such section provides in part: * * * There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any *246 trade or business, including - * * * (2) Traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * There is no dispute between the parties as to the fact that the petitioner expended the amounts claimed as expenses for transportation, meals, and lodging. Moreover, the petitioner's job assignments in connection with which such expenses arose were clearly temporary. E. G. Leach, 12 T.C. 20 (1949); Harry F. Schurer, 3 T.C. 544 (1944). The respondent's disallowance of a portion of such expenses was based solely on his determination that New York City, and not 369 Poughkeepsie, was the petitioner's principal place of business in 1967. The respondent contends that the petitioner's principal place of business was in the New York City area; therefore, that his tax home was located in that vicinity and his expenses of traveling to and remaining in that area are not deductible. In the alternative, the respondent argues that even if we should find that the petitioner's tax home was located in Poughkeepsie, *247 his expenses of traveling to and from the New York City area are nondeductible commuting expenses. We can dispose of both arguments by deciding whether the petitioner's principal place of business was in the New York City area. The deductibility of traveling expenses incurred on a trip which includes an overnight stay is governed by section 162(a)(2). William B. Turner, 56 T.C. 27 (April 8, 1971). For such expenses to be deductible, the taxpayer must establish that he was away from home; for that purpose, it is necessary to determine what place should be treated as his home for tax purposes. In Ronald D. Kroll, 49 T.C. 557, 561-562 (1968), we said: This Court has long and consistently held that "home" as used in section 162 means the vicinity of the taxpayer's principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. * * * If a taxpayer continues to reside in a vicinity far from the principal place of his business, then his traveling to his business is not required by such business, and the expenses of such traveling are not deductible. Commissioner v. Flowers, 326 U.S. 465 (1964). *248 Of course, if he does reside in the same vicinity as his principal place of business, and makes trips to other vicinities in which he remains only temporarily, his traveling expenses are deductible. Coburn v. Commissioner, 138 F. 2d 763 (C.A. 2, 1943), revg. a Memorandum Opinion of this Court on this issue; Charles G. Gustafson, 3 T.C. 998 (1944). Thus, the deductibility of the petitioner's expenses of traveling to and remaining in New York City during the tugboat strike can be resolved by determining whether New York City was his principal place of business so that his tax home was located in that vicinity. If a taxpayer incurs transportation expenses in traveling which is required by his business and which does not involve remaining away from home overnight, such expenses are deductible under the ordinary and necessary provision of section 162(a). William L. Heuer, Jr., 32 T.C. 947 (1959), affd. per curiam, 283 F. 2d 865 (C.A. 5, 1960). However, the expenses of commuting between one's residence and place of employment are nondeductible personal expenses. Sec. 262; Harold Gilberg, 55 T.C. 611(Jan. 7, 1971). Whether *249 the petitioner's transportation expenses incurred in traveling between Poughkeepsie and the New York City area, when he did not remain away from home overnight, are deductible depends upon whether such travel was required by his business. The answer to that question, in turn, depends upon whether his residence should be treated as his principal place of business or whether it was in the New York City area. In other words, did he reside in Poughkeepsie for personal reasons so that the travel resulted from his personal choice to reside there, or were there adequate business reasons for locating his business in Poughkeepsie so that his travel was required by his business? The petitioner maintained an office in his residence at Poughkeepsie, and such office was required by his business. At such office, he performed the essential administrative functions pertaining to his job - recordkeeping, billing, the solicitation of business - and received notification of employment. There, he also did certain preparatory work which was critical to the proper performance of his operational tasks. Neither the administrative tasks nor the preparatory tasks could be performed aboard ship. There was *250 no one to perform such tasks for the petitioner. Interport did not provide an office in New York City, and the evidence indicates that no other association provided one. The functions performed by the petitioner in his office clearly amount to more than the mere "homework" suggested by the respondent in his brief - they were essential and substantial in the performance of his business. The respondent contends that even though the petitioner may have maintained an office in his home, that fact alone does not make Poughkeepsie his principal place of business. He argues that 90 percent of all of the petitioner's employment was obtained through Interport; that one-third of such jobs were "in the New York City area"; 370 that the petitioner did not begin or end any employment in Poughkeepsie; that the New York City area would have been as convenient a place for the petitioner to locate his business; and that Poughkeepsie was the petitioner's family home. Thus, the respondent concludes that the petitioner worked in New York City but chose to reside in Poughkeepsie for personal reasons, and not for business reasons. Although the petitioner did receive the majority of his 1967 jobs *251 through Interport, that fact does not constitute a reason for the petitioner to locate his business in the New York City area. Compare William B. Turner, supra.Interport did not maintain an office in the New York City area, and there was no reason for the petitioner to visit the person who maintained the answering service on City Island. The petitioner was notified by telephone of any assignments which Interport had for him, and on completion of an assignment, he dealt with Interport by mail. Moreover, he was not limited to receiving jobs through Interport; he could and did receive some assignments directly from some ship owners and other assignments through other associations. Insofar as the petitioner's dealings with Interport are concerned, he could not have conducted his business more conveniently or economically by locating it in the New York City area. The petitioner was an independent ship pilot whose assignments during the taxable year consisted of numerous assignments, each lasting less than one week and usually only a day or two. During 1967, the petitioner had such assignments in the Boston, Newport, Connecticut, Long Island, New York, Philadelphia, Delaware Bay, and *252 Baltimore areas. He was also employed in traffic along the Delaware and Hudson Rivers. His area of potential employment was from Bucksport, Maine, to Norfolk, Virginia. Although in 1967 the petitioner had no jobs which commenced or ended in Poughkeepsie, he did have a significant amount of work in the Hudson River traffic. Such employment involved tug and barge traffic between Albany and other points along the River and New York City. In such year, although such jobs were relatively few in number, the net amount of fees derived therefrom was equal to almost 10 percent of the total net fees the petitioner earned from normal pilot employment. Poughkeepsie was centrally located with respect to such employment. Moreover, Poughkeepsie was centrally located with respect to the area of potential employment of the petitioner. Approximately one-third of the petitioner's jobs during 1967 began or ended in the New York City area. There was some dispute between the parties as to the total number of jobs and to the number that should be considered as beginning or ending in the New York City area, but the dispute is only minor - in any event, the number does not significantly exceed one-third *253 of the total. Furthermore, of the jobs that began or ended in the New York City area, many of them began elsewhere or ended elsewhere. When the petitioner had to go to or return from the Boston, Newport, or Connecticut areas, his trip was reduced by reason of the fact that he lived in Poughkeepsie. Poughkeepsie was even closer to one of the jobs in the New York City area than was New York City. Thus, for many of his trips, his travel would have been increased if it began in New York City. Though New York City might have been as convenient, it does not appear that it would have been significantly more convenient. The facts of this case establish that the petitioner had valid business reasons for selecting Poughkeepsie as the place of his business, although it also was his family home. In connection with some of his work, it would have been better for him to have been located in the New York City area, but in connection with most of his work, he was as well off with his business in Poughkeepsie. There was no regular pattern of traveling to and from the New York City area. Compare William L. Heuer, Jr., supra, and Steinhort v. Commissioner, 335 F. 2d 496 (C.A. 5, 1964). *254 Under these circumstances, we are unwilling to say that he should have located in the New York City area; he was justified in treating Poughkeepsie as his principal place of business. The respondent urges that the decision in this case is controlled by our holding in William L. Heuer, Jr., supra, and the decision of the Fifth Circuit in Steinhort v. Commissioner, supra. Cf. Rev. Rul. 54-497, 1954-2 C.B. 75. We think those cases are factually distingushable from the present case. In Heuer and Steinhort, the taxpayers were state pilots. Each was licensed for a 371 particular port and river area in which he did virtually all of his pilotage assignments. In each case there was a definable vicinity where the taxpayer regularly or ordinarily began and ended his runs. In Heuer, the taxpayer piloted ships between Pilottown and New Orleans; in Steinhort, the taxpayer piloted ships between the Gulf of Mexico and the Port of Houston. In Heuer, the maximum distance traveled was less than 100 miles. Moreover, in that case, the taxpayer operated principally as a "shift" pilot during the year in issue; thus, his work in such year was principally within *255 the Port of New Orleans where he worked 270 days. In Steinhort, the taxpayer lived 1 1/ miles from the turning basin in the Port of Houston. In that case, 55 of 58 facilities to which the taxpayer traveled were within 26 miles of such turning basin. Such turning basin was a point identifiable as the locus at which the taxpayer regularly began and ended runs. See Rev. Rul. 55-235, 1955-1 C.B. 274. In Heuer and Steinhort, each pilot was a member of an association given exclusive rights to pilot in such area and through which association he obtained all of his pilotage assignments. In each case, such association provided an office and a dispatcher at a location central to the taxpayer's area of work. In each case, the association paid expenses, collected fees, and distributed income. In neither case was the taxpayer required to provide his own office. Compare Smith v. Warren, 388 F. 2d 671 (C.A. 9, 1968). In each case, the court determined that the residence of the taxpayer was not his business headquarters. In the present case, the petitioner was a coastal pilot but was not a State pilot. He was not required to maintain a particular station or post of *256 duty. He was licensed to operate in several major port and river areas and did business in each of such areas. He was free to obtain employment from any association or by direct solicitation. He was required to maintain an office where he could be contacted with notice of employment. He paid his own expenses, collected his own fees, and would bear any loss arising out of the business. In short, all of the office work essential to his business was conducted by the petitioner at his office in his home. We have determined that the business headquarters of the petitioner was, in 1967, his office in his residence in Poughkeepsie. The remaining issue in this case deals with the deductibility of the cost of the radio used by the petitioner in his business. The respondent determined that such radio was a capital asset and that its useful life was 6 years. Section 263 prohibits a deduction for the cost of a capital asset, and such property includes "equipment * * * having a useful life substantially beyond the taxable year." Sec. 1.263(a)-2(a), Income Tax Regs. Section 167(a) allows a deduction for depreciation for such property when such property is used in the taxpayer's trade or business. *257 Sec. 1.167(a)-1(a), Income Tax Regs. Section 1.167(a)-1(b) of the regulations provides: For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. * * * The petitioner has the burden of proving the respondent's determination to be erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Challenge Manufacturing Co., 37 T.C. 650 (1962); Rule 32, Tax Court Rules of Practice. The petitioner testified that radios of the type used by him were used by other members of his profession, and that he knew of instances in which such radios were lost or stolen, but such testimony falls short of proof that the respondent's determination was incorrect. The petitioner's radio was purchased in 1965 and was still used satisfactorily in his business in July 1970. We therefore hold that the petitioner has failed to prove that the respondent erred in his determination. Arthur J. Marks et al., 9 B.T.A. 1047 (1928). In conclusion, we hold that the *258 petitioner's home for Federal income tax purposes was his residence in Poughkeepsie, and that his traveling from there was required by his business. We also hold that the petitioner has failed to prove that the respondent erred in his determination that the radio used by the petitioner in his business was a capital asset having a useful life of 6 years. Accordingly, Decision will be entered under Rule 50. 372 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩