JESSIE M. AND FRANCIS N. BLANKENSHIP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blankenship v. Commissioner
Docket No. 8414-77.
United States Tax Court
T.C. Memo 1979-366; 1979 Tax Ct. Memo LEXIS 166; 39 T.C.M. (CCH) 91; T.C.M. (RIA) 79366; September 10, 1979, Filed *166 Petitioner, an ironworker living in Garland, Tex., took employment of unknown duration in Texas City because no work was available in the Garland area. Held, petitioner's employment in Texas City was temporary and his travel expenses away from Garland were deductible under sec. 162(a)(2), I.R.C. 1954. Anderson Wallace, Jr., for the petitioners. Douglas R. Fortney, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined *167 a deficiency in petitioners' income tax in the amount of $1,487.98 for the taxable year 1975. The only adjustment placed in issue for our decision is whether under section 162(a), I.R.C. 1954, [1] petitioners are entitled to deduct $8,257.95 expended during 1975 for meals, lodging, and travel each weekend between their residence and place of employment as traveling expenses while "away from home" in the pursuit of a trade or business. FINDINGS OF FACT Jessie M. Blankenship and Francis N. Blankenship, husband and wife, resided in Garland, Tex., when their petition was filed. Since Francis Blankenship is a petitioner herein only because the couple filed a joint return, Jessie will be referred to as petitioner.They filed their return for the calendar year 1975 with the Internal Revenue Service Center, Austin, Tex. For many years preceding the year 1975, for 1975, and for subsequent years, petitioners have maintained their permanent residence in Garland, Tex., a suburb of Dallas. Petitioner is an ironworker and is a member of Local *168 Union No. 481 of the International Association of Bridge, Structural and Ornamental Iron Workers, which is headquartered in Dallas. During 1975, there was no union work available for petitioner in the Dallas area and, therefore, his union local business agent sent him to a sister local at Texas City, Tex., to obtain employment there until work in Dallas became available. Texas City is about 300 miles from Garland. Petitioner accepted a job with the Badger Co. (hereinafter Badger), working on an addition to the Monsanto Chemical Co. construction project at Texas City. He did not know from one day to the next how long he would be employed at the Texas City job and always intended to return to his home in the Dallas area as soon as he could find work. Petitioner was not told how long the Texas City job would last, nor did he make any commitment to his employer regarding how long he would work in Texas City. In fact, when petitioner took the job, he expected to work there only for a few days. While he was working for Badger, he was also looking for a job in Dallas. During petitioner's work in Texas City, he stayed in a motel and returned virtually every weekend to his wife *169 and retarded adult son who lived in Garland. Petitioner had lived in Garland for approximately 15 years, considered that his permanent address, and owned a home there. Throughout 1975, petitioner served as a trustee of his church in Dallas. He returned to the Dallas area from Texas City virtually every weekend in 1975 because his wife had never attended school and he was needed at home to manage the family's business affairs. At all times during 1975, petitioner was registered to vote in Garland, paid real estate taxes only in Garland, and had his automobile registered in Dallas County. While working in Texas City during 1975, petitioner paid union dues to his Dallas local and "foreign" dues to the Galveston local (Texas City was under the jurisdiction of the Galveston local). Petitioner worked in Texas City from January 20, 1975, to June of 1976, at which time he was laid off prior to completion of the Texas City construction job because the Texas City union local no longer had enough jobs to keep its own members employed. During the calendar year 1975, petitioner spent $8,257.95 for his meals and lodging in Texas City and for his transportation expenses between Garland *170 and Texas City. ULTIMATE FINDING OF FACT Petitioner's tax home during 1975 for purposes of section 162(a)(2) was Garland, Tex. Petitioner's employment at Texas City, Tex., in 1975 was temporary rather than indefinite. OPINION Petitioner's residence was in Garland, Tex., a suburb of Dallas. The issue is whether petitioner may deduct his traveling expenses, including meals and lodgings, while working as an ironworker in Texas City, Tex., during 1975. Pursuant to section 162(a)(2)[2] petitioner's travel expenses were deductible if petitioner was "away from home" in the pursuit of his employment. [3] Home, in this context, has been interpreted by this Court to mean the vicinity of the taxpayer's principal place of employment and not where his residence is located, if such residence is located in a different place from his principal place of employment. Kroll v. Commissioner, 49 T.C. 557 (1968). But this and other Courts have recognized an exception to this rule when the taxpayer's employment away from his residence and usual place of employment is temporary rather than permanent or indefinite in duration. Peurifoy v. Commissioner, 358 U.S. 59 (1958). *171 The rationale and the parameters of this rule and exception thereto are well explained in Kroll v. Commissioner, supra, as follows: But if a taxpayer has a principal place of employment in one location and accepts temporary work at another location, his presence at the second location is regarded as "away from home." E. G. Leach, 12 T.C. 20 (1949); Harry F. Schurer,3 T.C. 544 (1944). However, if the taxpayer, having a principal place of employment in one location, accepts work at another location which is not temporary but *172 is of indefinite or indeterminate period, his presence at the second location is not regarded as "away from home." Commissioner v. Peurifoy, 254 F. 2d 483 (C.A. 4, 1957), reversing 27 T.C. 149 (1956), affirmed per curiam 358 U.S. 59 (1958). Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home. Leo M. Verner,supra; Arnold P. Bark, 6 T.C. 851 (1946). The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. Leo M. Verner,supra; James v. United States, 308 F. 2d 204 (C.A. 9, 1962). The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks the question whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of *173 living expenses, which are of course nondeductible under section 262. If it is reasonable so to expect, as where a taxpayer has only one post of duty, which is permanent, then if he in fact chooses to maintain his residence elsewhere and incur living expenses near his trade or business as well, the duplication of expenses thereby resulting arises not from the needs of his business but from the taxpayer's personal choice. When, then, a taxpayer moves to a new permanent post of employment, it is generally reasonable to expect him to move his residence as well, and if he does not do so, and thereby incurs living expenses at his new post of employment while maintaining his old residence, the duplication again does not arise from business needs, but from personal considerations. If, however, the taxpayer's stay at the new post of business is to be temporary--"the sort of employment in which termination within a short period could be foreseen" ( Beatrice H. Albert,13 T.C. 129, 131 (1949))-- it is not reasonable to expect him to move his residence; so if he incurs living expenses at the temporary post, these are traveling expenses required by the trade or business rather *174 than by personal choice, and they are therefore deductible. * * * [49 T.C. at 562-563.] The question whether employment is temporary rather than indefinite or indeterminant is essentially "a narrow question of fact." Peurifoy v. Commissioner, supra. Efforts have been made to define the terms, such as in Boone v. United States, 482 F. 2d 417 (5th Cir. 1973), wherein the court said at p. 419: A temporary employment is one which is foreseeably for a short period of time or for a fixed duration. * * * In contrast, an indefinite or indeterminate employment is one where the prospect is that the work will continue for an indeterminate and substantially long period of time.* * * But it has been difficult to apply such definitions to varying factual circumstances and come out with a fixed rule that would supply the answer in each case. Numerous opinions have been written concerning the subject, most of which have decided the issue on the peculiar facts of that particular case, [4] relying on the adage as stated in Norwood v. Commissioner, 66 T.C. 467 (1976): *175 No single element is determinative of the ultimate factual issue of temporariness, and there are no rules of thumb, durational or otherwise. Having no definite yardstick to determine whether a job is temporary or indefinite, the courts have given serious consideration to whether, under the circumstances, it is reasonable to expect the taxpayer to move his residence to his current place of employment. While the taxpayer's subjective thoughts on the matter are entitled to some weight, this must really be an objective determination by the trier of the facts based on all the facts before him. This Court has developed several factors for consideration in making this determination. They are: (1) The nature of the job; (2) the taxpayer's reason for living away from his family; (3) his reasonable expectations as to the length of employment; and (4) the financial and familial bonds that the taxpayer has with his original residence. Giving consideration to all of the above factors and all the facts and circumstances shown by the evidence in this case, we have concluded that petitioner's job in Texas City was temporary and that it was not reasonable to expect petitioner to move *176 his residence to Texas City under the circumstances. Petitioner took the job in Texas City only because he could not find employment in the Dallas area. He was not told how long the job would last and he made no commitment as to how long he would stay. Petitioner testified that when he took the job he thought it would last only a few days or a very short time. This was not only because he had no conception of what the job involved or how much of his type of work was to be done, but also because Texas City was a well populated area with a normal supply of ironworkers available, and he knew that if at any time one of them needed or sought his job he would be terminated because he was not a member of the local union. There is no indication that these circumstances changed, and it was stipulated that petitioner did not know from one day to the next how long he would be employed at the Texas City job. Throughout his stay there he continued to look for work in the Dallas area. While we have no evidence of how long there would be a need for ironworkers on the Texas City job, even if it appeared that there would be a need for them over an extended period of time, petitioner had no *177 assurance that his services would be used beyond the next day. The fact that no work became available in the Dallas area and that petitioner was kept on the job for 17 months was not something petitioner could have anticipated at any time during those 17 months. In light of these facts, we are convinced that petitioner's employment at Texas City should be considered temporary throughout 1975. His employment was not for a fixed duration and, while it may not have been forseeably, or certainly, for a short period of time, the probabilities were that it would not last long. At the time petitioner took the job there was no prospect or reasonable likelihood that it would continue for an indefinite and substantially long period of time, and nothing occurred thereafter to make the prospect more reasonable. We do not accept respondent's rule of thumb that if a job lasts more than 1 year it becomes indefinite. Furthermore, by the end of 1975 petitioner had not been employed on the job a full year. Nor do we accept respondent's argument that the "deduction contemplated by section 162(a)(2) is for compensation of short, temporary trips away from the principal place of employment" if *178 we accord the word "trips" its usual meaning, which hardly contemplates taking a new job. The history of litigation on the subject stemming from Commissioner v. Flowers, 326 U.S. 465 (1946), belies such a limitation on the purpose of the statute. We have also given consideration to whether it was reasonable to expect petitioner to move his residence to Texas City, and our answer is no. Petitioner's roots were in Garland, and there can be no question that he would have preferred to work in that vicinity and live at home and that he would have given up his job in Texas City at any time suitable employment became available in the Dallas area. Petitioner had a home and owned rental property in Garland, and it was necessary for him to manage the family affairs since his wife, through lack of education, was unable to do so. Petitioner had a retarded adult son who worked in the kitchen at the Memorial Hospital in Garland. Throughout 1975 petitioner served as a trustee of his church in Dallas. The nature of his employment in Texas City was such that he could not expect to stay there long. Petitioner did not live away from his family and incur duplicate expenses *179 for lodgings and additional expenses for food and traveling for his own convenience; he did so out of necessity because his job was so far from his home. He could not even commute the 600 miles round-trip distance between his home and the jobsite as did the taxpayer in Boone v. United States, supra.The fact that petitioner continued to pay dues to his local union in Dallas is indicative of his desire and intent to return to the Dallas area as soon as possible. Under such circumstances, we do not believe it is reasonable to have expected petitioner to move his family from Garland to Texas City in 1975. Since his job was temporary and it was reasonable for petitioner to maintain his home in Garland, petitioner's home for purposes of section 162(a)(2) was in Garland, and his travel expenses were incurred while away from home. Consequently, the stipulated expenses here involved were deductible. We find this case to be factually distinguishable from Boone v. United States, supra, and that case does not require us to reach a different conclusion here under the rule of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), *180 cert. denied 404 U.S. 940 (1971). In Boone, a refund case which originated in the District Court, the taxpayer commuted every day from his home to his jobsite and hence there was no issue of whether his expenses were incurred away from home overnight. He testified that he commuted for his own convenience, and the fact that he was promoted soon after he began the employment indicated that the job would be of an indefinite nature rather than temporary. We also find the facts in this case to be sufficiently different from those in Peurifoy v. Commissioner, supra, so that case does not compel a different conclusion here as the Fourth Circuit thought it did in Babeaux v. Commissioner (decided July 12, 1979, 44 AFTR 2d 79-5102). McCallister v. Commissioner, 70 T.C. 505 (1978), is also distinguishable because there the taxpayer's employment away from his home was in a remote area on a power plant that it was expected would take 4 years to complete, and petitioner actually stayed on the job 40 months. The taxpayer there also commuted between his home and his jobsite daily. We hold for petitioner on this issue. *181 Decision will be entered under Rule 155. [5]
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue, unless otherwise indicated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *. ↩
3. The Supreme Court has interpreted this to mean away from home overnight. United States v. Correll, 389 U.S. 299↩ (1967).
4. See, however, Babeaux v. Commissioner, decided July 12, 1979, 44 AFTR 2d 79-5102, reversing three Memorandum Opinions of this Court, wherein the Fourth Circuit decided that those cases were factually indistinguishable from Commissioner v. Peurifoy254 F. 2d 483↩ (4th Cir. 1957), and were controlled by that case.
5. While both parties on brief suggest that the decision should be entered for petitioner or for respondent based on the one issue to be decided, there appear to have been some adjustments in the notice of deficiency which petitioners did not place in issue in their petition. We have therefore directed that decision be entered under Rule 155. If the uncontested adjustments are all automatic and a decision of no deficiency should be entered for petitioner, the parties should file a stipulated decision or notify the Court as expeditiously as possible.↩