JACK B. HILLGREN AND MOLLY A. HILLGREN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hillgren v. Commissioner
Docket No. 6556-77.
United States Tax Court
T.C. Memo 1980-101; 1980 Tax Ct. Memo LEXIS 487; 40 T.C.M. (CCH) 59; T.C.M. (RIA) 80101; March 31, 1980, Filed Thurman Gay, for the petitioners. Gregory A. Robinson, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1974 and 1975 in the respective amounts of $1,569.32 and $1,586.05. Due *488 to concessions by petitioners, only one issue remains for our decision: whether Petitioner Jack B. Hillgren was away from home within the meaning of section 162(a)(2), Internal Revenue Code of 1954, [1] when he was employed in Joseph City, Arizona, during 1974 and 1975. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. Petitioners Jack B. Hillgren (hereinafter petitioner) and Molly A. Hillgren filed joint Federal income tax returns for the taxable years 1974 and 1975. They resided in Phoenix, Arizona, when they filed their petition in this proceeding. Petitioner has been an ironworker for over 30 years. He is a senior union member of Ironworkers Local 75 in Phoenix. From 1970 through 1973 petitioner worked on various jobs of short duration in at least twenty locales. Petitioner went to work for Bechtel Power Corporation in Joseph City, Arizona, on October 8, 1973. Bechtel was constructing a power plant in Joseph City, which is approximately 250 miles from Phoenix. *489 The plant was to be built in four phases, but one phase eventually was cancelled.Bechtel's undertaking in Joseph City is hereinafter referred to as the project. Petitioner was the fourth ironworker to be hired for the project. Initially, he served as the temporary union steward for ironworkers on the project. He was given that job because the steward who was slated to hold that job permanently was then working in California. Since he had been brought to the job as a steward, it was likely that petitioner would be terminated soon after the permanent steward arrived. However, when the permanent steward arrived, petitioner was allowed to relinquish his position as temporary steward and stay on. Petitioner then expected to remain until the next cut-off period, i.e., another 30 to 60 days.
Petitioner worked for Bechtel at Joseph City until January 12, 1976, when he was laid off due to a reduction in force.During the term of petitioner's employment, October 8, 1973, to January 12, 1976, petitioner had no guarantee of permanent employment. He could have been fired. His union could have recalled him at any time. He could have been laid off due to a reduction in force at a date earlier *490 than January 12, 1976. In the event of such a reduction in force, one man who is senior to another may be laid off even though the junior man is allowed to remain. When petitioner finally was laid off in January 1976, ironworkers junior to petitioner remained on the project. On the other hand, petitioner benefited significantly from his seniority. He was a preferred member of the local union. Workers who arrived at the project after petitioner generally would be laid off before petitioner, unless personality conflicts intervened. Other ironworkers were laid off during delays and shutdowns which occured during 1974 and 1975, but petitioner was retained during those periods, even thought he could not work on the project but had to clear weeds and mend fences. When petitioner accepted employment with Bechtel in 1973, he knew that the project would continue for several years. Petitioner would have preferred to work in Phoenix than in Joseph City, and he tried in vain to find work in Phoenix throughout the term of his employment in Joseph City. During the years in isksue, petitioners had substantial family ties to Phoenix, as they had lived there since 1966. Their daughter *491 was attending high school there and Petitioner Molly A. Hillgren was working for a realty company there. Petitioner spent $6,540.89 and $6,399.69 for travel and living expenses attributable to his work in Joseph City during the taxable years 1974 and 1975, respectively. On their joint Federal income tax returns for 1974 and 1975 petitioners deducted $6,540.89 and $6,399.69, respectively, as employee business expenses under sections 62(2)(B) and 162(a)(2). In his statutory notice of deficiency, the Commissioner determined that petitioner was working in Joseph City for an indefinite period and that Joseph City was petitioner's tax home for 1974 and 1975. Accordingly, he determined that petitioner was not away from home within the meaning of section 162(a)(2) and, therefore, he disallowed the claimed deductions for travel and living expenses in their entirety. ULTIMATE FINDING OF FACT Petitioner's employment in Joseph City, Arizona, was of a temporary nature until January 1, 1975, when it ripened into indefinite employment. Petitioner's tax home for 1974 was Phoenix, Arizona, but his tax home for 1975 was Joseph City, Arizona. OPINION Section 162(a)(2) allows a deduction *492 for travel expenses. The section provides in pertinent part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * * [Emphasis added.] The only ground on which respondent has disallowed petitioners' claimed deduction is that petitioner was not "away from home" when he incurred the expenses. An individual's tax home is usually his principal place of employment, Wills v. Commissioner, 411 F.2d 537 (9th Cir. 1969), affg. 48 T.C. 308 (1967), and his expenses for meals and lodging in that vicinity are nondeductible under section 262. However, a taxpayer may deduct such expenses if incurred when he is temporarily employed away from his permanent home. Peurifoy v. Commissioner, 358 U.S. 59 (1958). As we explained in Tucker v. Commissioner, 55 T.C. 783, 786 (1971): *493 The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Ronald D. Kroll, 49 T.C. 557, 562 (1968). In furtherance of this purpose, when a taxpayer with a principal place of employment goes elsewhere to take work which is merely temporary he may deduct the living expenses incurred at the temporary post of duty, because it would not be reasonable to expect him to move his residence under such circumstances. Emil J. Michaels, 53 T.C. 269 (1969); Ronald D. Kroll,supra.* * * On the other hand, when a taxpayer accepts employment of an indefinite or permanent nature, the location of his tax home shifts to the vicinity of his employment. Commissioner v. Peurifoy, 254 F.2d 483, 486-487 (4th Cir. 1957), rev'g 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958). Employment which is originally temporary may become indefinite due to changed circumstances, or simply by *494 the passage of time. Kroll v. Commissioner, 49 T.C. 557, 562 (1968); Garlock v. Commissioner, 34 T.C. 611, 615 (1960). The United States Court of Appeals for the Ninth Circuit, the forum to which an appeal of this case would be taken, disagreed with a popular interpretation of the word "indefinite" as it was used in Commissioner v. Peurifoy, supra, when the court decided Harvey v. Commissioner, 283 F.2d 491 (9th Cir. 1960), rev'g 31 T.C. 1368 (1959). "Peurifoy, then, does not establish the rule as suggested by the Commissioner, that the place where a taxpayer is employed for an 'indefinite' period, is necessarily his tax home." 283 F.2d at 495. The court went on to enunciate its own test of whether or not a taxpayer had changed his tax home due to the acceptance of new employment. "An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station." 283 F.2d at 495. Later, in Wright v. Hartsell, 305 F.2d 221 (9th Cir. 1962), affg. 182 F. Supp. 725 (E.D. Idaho 1960), *495 the court had occasion to explain the approach it took in deciding Harvey v. Commissioner, supra: [The] distinction has customarily been drawn between "temporary" and "indefinite" employment and in Harvey we drew the distinction between "substantially long" and "substantially short" employment. The Harvey decision did not reject the distinction which had been developed by other courts, but rather rejected the restrictive method in which it had been applied. Other courts have engaged in the practice of basing the deductibility question on whether the taxpayer was away from home for an "indefinite" period of time, thus assuming that the taxpayer should be expected to change his residence unless he could foresee the termination of his job within a reasonably short period of time.In Harvey, we held that the taxpayer should not be expected to change his residence unless he expects to be employed elsewhere for a reasonably long period of time. * * * 305 F.2d at 224, n.1. In yet another case before that court which addressed the same issue, the court indicated that it would not avoid using the label "indefinite" to identify employment which was neither *496 temporary nor of substantially short duration. Wills v. Commissioner, 411 F.2d 537, 541 (9th Cir. 1969). Thus, contrary to the contentions of petitioners, the state of the law on this issue is not materially different in the Ninth Circuit than it is elsewhere. In the instant case, petitioner incurred additional and duplicate living expenses while he worked in Joseph City. From the date of his arrival, his employment was "indefinite" in the sense that the duration of his employment was not fixed. However, the question is whether petitioner's employment was temporary, i.e., whether there was a reasonable probability known to petitioner that his employment would last for a substantially long period of time. As long as petitioner's employment in Joseph City was temporary, Phoenix remained his tax home, and the traveling expenses incurred in connection with the job in Joseph City are deductible under section 162(a)(2).The question whether petitioner's employment in Joseph City was temporary in nature is a question of fact. Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). On the basis of the entire record before us, we have found that petitioner's *497 employment in Joseph City was temporary in nature at the outset, but that by January 1, 1975, it became known to petitioner that his employment would continue for a substantially long period of time. Unquestionably, petitioner's job in Joseph City lacked permanence. When he first arrived in Joseph City in 1973, a year not before the Court, it seemed likely that his stay would be short. Later, as an ironworker, he could have been fired, recalled by the union, or laid off. Considering the numerous jobs of short duration that petitioner has held and considering the various circumstances that could cause the job in Joseph City to be of short duration, we are convinced that part of petitioner's employment in Joseph City was of a temporary nature. However, at some point in time petitioner's employment in Joseph City ceased being temporary. While there is no specific event which marks that point in time, we have determined it to be January 1, 1975. On that date, petitioner had worked on the project for almost fifteen months. He had left the temporary post of union steward approximately twelve months prior to that date, giving petitioner adequate time to assess objectively the magnitude *498 of the project, the potential for employment in Phonix, and his own seniority in comparison to that of his co-workers. By that time, it should have been apparent to petitioner that he would continue to be employed at the project indefinitely, i.e., for a substantially long period of time.Cf. Norwood v. Commissioner, 66 T.C. 467 (1976). The only taxable years before the Court in this case are 1974 and 1975. The deductibility of petitioner's traveling expenses for 1973 was decided by this Court previously under the provisions of section 7463 relating to small tax cases. From the language of their petition in this case, it is apparent that petitioners have misunderstood the effect of that prior decision.The outcome of this case is not controlled by that decision. First, decisions in proceedings under section 7463 have no precedential value. Sec. 7463(b). Second, the only year before the Court in that prior case was 1973. The Court did not have jurisdiction to redetermine petitioners' Federal income tax liability for 1974 or 1975. The Court explicitly reserved to a future date any opinion concerning the temporary or indefinite nature of petitioner's employment *499 during 1974 or 1975. Having found that petitioner's employment in Joseph City was of a temporary nature only until January 1, 1975, we accordingly have found that petitioner's tax home for 1974 was Phoenix and that petitioner's tax home for 1975 was Joseph City. Consequently, the traveling expenses incurred by petitioner in connection with his employment in Joseph City during 1974 are deductible under section 162(a)(2). Respondent properly disallowed the traveling expenses which were claimed by petitioners on their Federal income tax return for 1975. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩