FRANK J. BORSODY and KATHRYN A. BORSODY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borsody v. Commissioner
Docket No. 6082-73.
United States Tax Court
T.C. Memo 1976-47; 1976 Tax Ct. Memo LEXIS 358; 35 T.C.M. (CCH) 214; T.C.M. (RIA) 760047; February 24, 1976, Filed Frank J. Borsody, pro se. Robert E. Dallman, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' income tax for 1970 in the amount of $4,349.10. The following issues are presented for decision: 1. Whether petitioners have substantiated a deduction of $2,104 for entertainment expenses in the manner required by section 274(d). [1]/ 2. Whether petitioners are liable for self-employment taxes under section 1401 in respect of income derived from petitioner Frank J. Borsody's practice of medicine. 3. Whether petitioners are entitled to an alimony deduction under section 215 for cash payments of $6,000 or $4,000. 4. Whether *361 petitioners are entitled to an alimony deduction under section 215 for the premiums paid on an insurance policy maintained on petitioner Frank J. Borsody's life. 5. Whether petitioners are entitled to a deduction of $752 under section 162(a) for amounts paid for meals which petitioner Frank J. Borsody ate on the days he worked at St. Elizabeth's Hospital. 6. Whether petitioners are entitled to a deduction of $4,127 under section 162(a) for expenses incurred in the operation of one or more automobiles. FINDINGS OF FACT At the time their petition was filed, petitioners Frank J. Borsody and Kathryn A. Borsody, husband and wife, were legal residents of Virginia. They filed both an original and amended joint Federal income tax return for 1970. The case was tried pro se by petitioner Frank J. Borsody, and, for convenience, he will be referred to herein as petitioner or Dr. Borsody. During 1970, Dr. Borsody was a physician engaged in the practice of medicine in offices located at 18th and I Streets, N.W. in Washington, D.C. In addition, he worked as a physician 3 nights and parts of 3 days, about 40 hours each week, at St. Elizabeth's Hospital (hereinafter St. Elizabeth's or the *362 hospital). The St. Elizabeth's work consisted mainly of being "on call" when needed by patients at the hospital. Petitioners' amended income tax return reflects earnings by petitioner Kathryn A. Borsody as a private nurse and a loss deduction from an alleged farming business. Issue 1. Entertainment Expense
On their amended joint income tax return for 1970, petitioners claimed a deduction of $2,104 for promotion and entertainment, and the deduction was disallowed. During 1970, Dr. Borsody incurred expenses totaling $1,080.46 which he paid through Diners Club and similar credit cards, plus expenses of $58.73 on oil company credit cards. Neither these cards nor any other records introduced in evidence show the names of the persons entertained or the business purpose of the entertainment. During 1970, Dr. Borsody bought a number of meals for a lady who did some typing of a manuscript of a novel for him. Dr. Borsody has never published a book and has never realized any income from his writing. There was no express or implied agreement that Dr. Borsody would buy meals or entertain the typist as compensation for her services. Issue 2. Self-employment Tax
On their 1970 *363 amended joint income tax return, petitioners reported business income of $21,767 from the practice of medicine. In addition, Dr. Borsody received a salary from the Department of Health, Education and Welfare on which he paid no self-employment tax, but from which civil service retirement deductions were withheld. Issue 3. Alimony
On June 29, 1970, Dr. Borsody signed a separation agreement, executed by his former wife on June 9, 1970, obligating him to pay her $1,000 per month as alimony and $500 per month as child support, but not specifying the date such payments were to begin. Dr. Borsody was divorced from his former wife in Mexico in early July 1970. The separation agreement, bearing his signature, was not returned to his former wife or her attorney until late August 1970. During the last 6 months of 1970, Dr. Borsody made payments to his former wife with both checks and currency. His canceled checks total $5,985. She does not claim and has never claimed Dr. Borsody was delinquent in his payments. During that 6-month period, Dr. Borsody paid his former wife a total of not less than $9,000, of which $6,000 was paid to discharge his obligation under the written agreement *364 to provide for her support. Respondent allowed a deduction of only $4,000 of the $6,000 deducted by petitioners on their amended joint return. Issue 4. Life Insurance Premiums
Paragraph 11 of the separation agreement executed by Dr. Borsody's former wife on June 9, 1970, and by Dr. Borsody on June 29, 1970, is as follows: The Husband [Dr. Borsody] shall maintain in force life insurance policies with an aggregate value of not less than $100,000, and shall designate the Wife and the minor children of the parties as beneficiaries in equal shares. Upon the death of any child the aggregate amount of insurance in force shall be reduced on a pro rata basis. On August 28, 1967, Dr. Borsody applied to Bankers Security Life Insurance Society for a $425,000 insurance policy on his life payable at his death to his estate. The application stated he was the owner of the policy, and he was given the right to designate the policy's beneficiary. On November 13, 1967, he amended the application to reduce the policy to the face amount of $300,000. On November 7, 1968, he applied to change the face amount of the policy to $150,000 subject to an automatic premium loan provision. During 1970, *365 Dr. Borsody maintained no insurance on his life other than this policy. During 1970, Dr. Borsody paid premiums on this policy and in his petition alleges he is entitled to a $1,200 deduction for the premiums paid thereon during the last 6 months of 1970, citing Rev. Rul. 70-218, 1970-1 C.B. 19. Issue 5. Cost of Meals
During 1970, Dr. Borsody worked Tuesday, Thursday, and Sunday nights at St. Elizabeth's, starting work at 5:30 p.m. and finishing at 8:30 a.m. Because the hospital did not provide his evening meals or breakfasts, Dr. Borsody bought food at a supermarket and usually ate his Tuesday and Thursday dinners and his Wednesday, Friday, and Monday breakfasts at the hospital. On occasion, he ate at a restaurant on his way to or from the hospital. Dr. Borsody estimated the cost of these meals at $752. Dr. Borsody's private practice office at 18th and I Streets, N.W., Washington, D.C., was located 3 or 4 miles from St. Elizabeth's. The hospital was not out of his home area. As his employer, the hospital imposed no requirements as to where his meals would be eaten. Issue 6. Automobile Expense
On schedule C of their amended income tax return, relating *366 to Dr. Borsody's business as a physician, petitioners claimed a deduction labeled "auto" in the amount of $4,127. Respondent disallowed the entire amount. During 1970, Dr. Borsody leased a Buick Skylark automobile at a cost of $1,946. He owned a Pontiac LeMans, which was used by his wife, and an Oldsmobile station wagon, which he made available to his former wife. His total expenditures for gasoline, oil, repairs, etc., amounted to $2,280. Dr. Borsody used an automobile in connection with his medical practice. He traveled daily from his office at 18th and I Streets, N.W. to Sibley Hospital and George Washington Hospital to visit patients. He also used it to make occasional house calls and to travel to and from his work at St. Elizabeth's. In addition, he used one of his automobiles for commuting and in connection with his horse show and horse raising activities. OPINION Issue 1. Entertainment Expense
Section 274(d) provides that no deduction may be allowed for entertainment or similar expenses unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating *367 his own statement (1) the amount of such expense or other item, (2) the time and place of the entertainment, (3) the business purpose of the expense or other item, and (4) the business relationship to the taxpayer of the person or persons entertained. The regulations amplifying this section specify in detail the records required to meet these substantiation requirements. Sec. 1.274-5(c)(2), Income Tax Regs.; William F. Sanford,50 T.C. 823 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). The only elements established by the credit card receipts from restaurants and other places of entertainment were the time, place, and amount of the expenditures. The business purpose of the claimed expenditures or the business relationship to Dr. Borsody of the persons entertained is not documented in any way. Dr. Borsody testified that most of the entertainment was afforded to a lady engaged in typing a manuscript of a novel he had written. We are satisfied neither that this testimony is reliable nor that Dr. Borsody had any business purpose or profit motive in undertaking the writing *368 of a novel during 1970. In any event, even if we were convinced that the questioned expenses were business related, the expenditures were not substantiated in the manner prescribed by section 274(d). Respondent's disallowance of the deduction is sustained. Issue 2. Self-employment Tax
Dr. Borsody does not deny that he received self-employment income of $21,767 as a physician during 1970. He maintains, however, that he is not required to pay self-employment tax on that income because, during that year, he received a salary from the Department of Health, Education and Welfare from which civil service retirement contributions were withheld and, upon retirement, he will receive a civil service annuity. There is no merit in Dr. Borsody's argument. Section 1401(a) provides that: "In addition to other taxes, there shall be imposed for each taxable year" a tax at a specified rate on "the self-employment income of every individual." Section 1402(b)(1)(E) defines the term "self-employment income" to mean "the net earnings from self-employment derived by an individual (other than a nonresident *369 alien individual) during any taxable year" to the extent of $7,800, "minus * * * the amount of the wages paid to such individual during the taxable year." By section 1402(d), the definition of the term "wages" for Federal Insurance Contributions Act (section 3101 and following sections) purposes is adopted for the purposes of the self-employment tax (including section 1402(b)(1)(E)). Section 3121(a) defines "wages" to mean, with exceptions, "all remuneration for employment," and section 3121(b)(6)(A) defines "employment" to exclude "services performed in the employ of the United States * * * if such service is covered by a retirement system established by a law of the United States." While these statutory provisions are laced with technical definitions and cross-references, careful reading leaves no doubt that $7,800 of Dr. Borsody's 1970 medical practice income is subject to the self-employment tax. His receipt of Federal employment income, which was subject to civil service retirement withholding, does not qualify his liability for the tax in any respect. Accordingly, he is liable for self-employment tax of $538.20. Issue 3. Alimony
To support the disallowance of $2,000 *370 of the $6,000 deducted by petitioners as alimony, respondent advances two arguments: (1) The separation agreement did not become effective until a signed copy was returned to Dr. Borsody's former wife in late August 1970, and the payments for July and August, therefore, were not made pursuant to a written binding agreement as required by section 71 and section 1.71-1(b)(1)(i), Income Tax Regs.; and (2) petitioners have not substantiated the payments for July and August. We think both of respondent's arguments lack merit. As to the first argument, the evidence is clear that Dr. Borsody signed the separation agreement on June 29, 1970, a few days before he obtained his Mexican divorce. The agreement was acknowledged before a notary public on that date. Although the agreement does not state an effective date, we think its most reasonable interpretation is that it became effective when signed. This conclusion is supported by the fact that Dr. Borsody began his alimony and child support payments to his former wife beginning July 1, 1970, and paid them monthly thereafter. Accordingly, the alimony payments made after June 29, 1970, were made pursuant to a written *371 separation agreement as required by section 71 and are deductible under section 215. Notwithstanding respondent's argument to the contrary, we think petitioner established that he paid his former wife alimony of $6,000 after the separation agreement was signed. True, he has canceled checks for a sum slightly less than $6,000, but he testified unequivocally and, we think, credibly that he paid her cash and checks totaling more than $9,000. She admitted that she received both checks and currency from him, and she never claimed he was delinquent on any obligations to her. True, she reported only $4,000 as taxable income, but she reported this lesser amount not on the ground that $4,000 was all she received, but on the theory that the agreement did not become effective until she or her attorney received the signed copy of the agreement. She took this position on the advice of the accountant who prepared her income tax return. The mere fact that she failed to report the full amount of her taxable income under section 71 does not deny petitioners a proper alimony deduction. Accordingly, we conclude that petitioner did in fact make alimony payments aggregating at least $6,000 during the *372 last 6 months of 1970, and his claimed deduction, therefore, is allowable under section 215. Issue 4. Life Insurance Premiums
There is obviously no merit in petitioners' claim to a deduction for the premiums on this life insurance policy. Petitioner was the owner of the policy; his estate was designated as the beneficiary; and he had the right to change the beneficiary. The insurance protection and increasing cash surrender value thus inured to the benefit of Dr. Borsody, not his former wife. There is no evidence that Dr. Borsody ever purported to assign the policy to his former wife or that he ever attempted to irrevocably designate his former wife as a beneficiary of the policy. The premium payments were not alimony within the meaning of section 215 but were nondeductible personal expenses under section 262. Lemuel Alexander Carmichael,14 T.C. 1356, 1362-1365 (1950). Issue 5. Cost of Meals
Petitioner has not clearly articulated his position regarding the deductibility of the meals he ate before and after the nights he worked at St. Elizabeth's. However, we understand he relies upon section 162(a)(2) which allows a deduction for "traveling expenses *373 (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." While it is true that petitioner was away from his residence overnight while performing his services at St. Elizabeth's, such absence does not constitute being "away from home" within the meaning of section 162(a)(2). For Federal tax purposes, a taxpayer's home is his abode in the vicinity of his principal place of employment. Lloyd G. Jones,54 T.C. 734, 740 (1970), affd. 444 F.2d 508 (5th Cir. 1971); Ronald D. Kroll,49 T.C. 557, 561 (1968); Floyd Garlock,34 T.C. 611, 614 (1960). It is clear that both petitioner's principal place of business and his residence were in the Washington, D.C. area. He carried on his medical practice in that city, and lived in one of the surrounding suburbs. Petitioner's tax home was, therefore, Washington, D.C., and from the record, it is clear that the expenses in question were not incurred while away from home. To the contrary, petitioner's overnight stays were part of his *374 weekly routine and, as a factual matter, eating his meals at St. Elizabeth's places petitioner in the same position as any individual who eats his meals while at his office or jobsite. Cf. Jerome Mortrud,44 T.C. 208, 213 (1965). Since petitioner was not away from home within the meaning of section 162(a)(2), the expenses in question are not deductible. See Ronald D. Kroll,supra at 562; Commissioner v. Flowers,148 F.2d 163, 164 (5th Cir. 1945), revg. a Memorandum Opinion of this Court, revd. on other grounds 326 U.S. 465 (1946); cf. United States v. Correll,389 U.S. 299 (1967); see also section 1.262-1(b)(5), Income Tax Regs.
Issue 6. Automobile Expense
The facts on this issue are confused and imprecise. Dr. Borsody is entitled to deductions for the expenses incurred in the use of his automobile for business purposes but not for personal or commuting purposes. The evidence is clear that he used his automobile at least to some extent in his medical practice. But the nature and location of his practice would preclude the extensive use which he claims. The *375 record is also clear that he used an automobile for transporting his horses to and from horse shows and related activities in connection with an alleged farm business. From the testimony offered at the trial, it would be difficult to distinguish this so-called farm business from a hobby of owning and showing horses. But the notice of deficiency allows deductions for a farm loss, and respondent did not allege or show that petitioners' horse raising and showing was not, in fact, a business activity. Accordingly, on this record, petitioner is entitled to a deduction for the automobile expenses related to his alleged farming business. The testimony designed to distinguish the nondeductible personal use of petitioners' automobiles from their business use does not permit a precise calculation as to the amount allowable as a deduction. On consideration of the entire record, however, we hold petitioners are entitled to an automobile expense deduction of $2,200. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.